**CAREER CONNECTIONS CHARTER HIGH SCHOOL, Petitioner**

v.

**SCHOOL DISTRICT OF PITTSBURGH, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 24, 2014.

Decided May 19, 2014.

---

Matthew M. Hoffman, Pittsburgh, for petitioner.

Christian D. Bareford, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge (P.), and McCULLOUGH, Judge.

OPINION BY President Judge PELLEGRINI.

Career Connections Charter High School (Career Connections) petitions for review of an order of the Pennsylvania State Charter School Appeal Board (CAB) affirming the decision of the Board of Pub-

lic Education of the School District of Pittsburgh (District) which declined to renew Career Connections' charter pursuant to Section 1729–A(a) of the Charter School Law (CSL).[1] For the reasons that follow, we affirm.

Career Connections initially applied for a charter in 1998 which the District granted for a three-year period, and the school began operating in the 1999–2000 school year. The District renewed Career Connections' charter in 2002 for an additional five-year term. On May 1, 2007, the District renewed the charter for another five-year term, subject to a March 21, 2007 resolution indicating that the District would continue to actively monitor Career Connections' progress according to action plans for improvement negotiated during the renewal process.

By letter dated July 1, 2011, Career Connections notified the District of its intent to seek renewal of its charter for an additional five-year term. The District Review Team (Review Team) conducted a comprehensive review, which included a site visit to Career Connections on October 31, 2011. On March 6, 2012, the Review Team recommended to the District that the charter not be renewed because Career Connections did not continue to meet all conditions, standards and procedures contained in the written charter agree-

ment; did not continue to meet requirements for student performance; did not provide the District with expanded choices in the types of educational opportunities currently being offered by the school system and was not able to serve as a model to other schools in the system; did not show a considerable level of parental involvement in the school or that a majority of parents were satisfied with the school; and had not addressed various facilities issues. (CAB's October 7, 2013 Opinion at 5). On March 21, 2012, the District voted to accept the recommendation of the Review Team that it not renew Career Connections' charter.

On May 7, 2012, the District sent Career Connections a Notice of Nonrenewal setting forth 23 specific bases for nonrenewal of its charter. Without assigning any of the 23 enumerated deficiencies to a specific category of violation, the Notice of Nonrenewal stated:

These deficiencies support the following causes for nonrenewal of the charter for [Career Connections]:

1. One or more material violations of any of the conditions, standards or procedures contained in the written charter.

2. Failure to meet the requirements of student performance set forth in 22 Pa.Code Ch. 4 (relating to curriculum)

---

1. Act of March 10, 1949, P.L. 30, *added by* the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17–1729–A(a). That section provides:

(a) During the term of the charter or at the end of the term of the charter, the local board of school directors may choose to revoke or not to renew the charter based on any of the following:

(1) One or more material violations of any of the conditions, standards or procedures contained in the written charter signed pursuant to section 1720–A.

(2) Failure to meet the requirements for student performance set forth in 22 Pa. Code Ch. 5 (relating to curriculum) or sub-

sequent regulations promulgated to replace 22 Pa.Code Ch. 5 or failure to meet any performance standard set forth in the written charter signed pursuant to section 1716–A.

(3) Failure to meet generally accepted standards of fiscal management or audit requirements.

(4) Violation of provisions of this article.

(5) Violation of any provision of law from which the charter school has not been exempted, including Federal laws and regulations governing children with disabilities.

(6) The charter school has been convicted of fraud.

or failure to meet any performance standards set forth in the written charter.

3. Failure to meet generally accepted standards of fiscal management or audit requirements.

4. Violation of provisions of the Charter School Law.

5. Violation of any provision of law from which the charter school has not been exempted, including Federal laws and regulations governing children with disabilities.

(*Id.* at 8). Following a series of public hearings and a 30–day public comment period, a hearing officer submitted Findings of Fact and Conclusions of Law (Adjudication) to the District's Board recommending non-renewal of the charter.[2] The District adopted by resolution the hearing officer's Adjudication in its entirety and declined to renew Career Connections' charter for the requested term.

Career Connections then appealed to the CAB, which affirmed the District's decision not to renew the charter because Career Connections: (1) failed to meet the requirements for student performance set forth in the Pennsylvania Department of Education's (PDE) regulations and in its own charter; and (2) committed a number of material violations of its charter. Specifically, the CAB found that Career Connections failed to offer: a choice between two daily schedules; a year-round academic calendar; an interdisciplinary curriculum; valuable and meaningful learning experiences to all students through the use of an internship; and courses promised in the charter application. The CAB held that Career Connections' failure to provide these items and its accompanying failure to seek approval from the District for making such changes constituted material violations of the charter justifying nonrenewal. This appeal by Career Connections followed.[3]

---

2. Although the Notice of Nonrenewal listed 23 specific paragraphs in support of nonrenewal, the hearing officer narrowed those down to the following reasons:
    1. Failure to comply with student performance standards set forth in Chapter 4 by failing to make Adequate Yearly Progress (AYP) and failing to show sustained progress in improving student performance/student learning.
    2. Violating one or more material conditions of its charter by:
        a. Failing to offer students a choice between two daily schedules;
        b. Failing to offer a year-round calendar;
        c. Failing to maintain adequate support as shown in decreasing enrollment numbers;
        d. Failing to offer an interdisciplinary curriculum;
        e. Failing to offer valuable and meaningful learning experiences through the use of the internship by all students;
        f. Failing to offer courses promised in its application; and
        g. Failing to achieve 100% Highly Qualified Teachers.
    3. Violating generally accepted standards of fiscal management by:
        a. Failing to fund its budgetary reserve; and
        b. Pre-paying its lease with the Boys & Girls Club.
    4. Violating a provision of the Charter School Law by violating public school facility regulations pertaining to the health and safety of pupils, as noted in the facilities inspection report.
    5. Violating the No Child Left Behind Act by failing to meet its requirements pertaining to Highly Qualified Teachers.
    6. Career Connections ... is not meeting the goals and standards identified in its charter, and has not been faithful to the terms of its charter and applicable law.
    (CAB's October 7, 2013 Opinion at 38–39).

3. Our review of the CAB's decision is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the decision is not supported by substantial evidence. *Ronald H. Brown Charter School v. Harrisburg City School District*, 928 A.2d 1145, 1147 n. 6 (Pa.Cmwlth.2007).

## I.

■ Career Connections first argues that the CAB erred in concluding that it failed to meet the standards for student performance set forth in the PDE's regulations or in its charter. In support of this argument, Career Connections alleges that neither the PDE's regulations nor the Career Connections charter requires a minimum level of proficiency on the Pennsylvania System of School Assessment (PSSA) tests in order for a charter to be renewed. It also argues that the performance of its students is gradually improving, and its students' PSSA scores generally exceed those of students from its primary feeder schools.

### A.

Section 1729–A(a)(2) of the CSL permits a school district to deny renewal of a charter school's charter for "[f]ailure to meet the requirements for student performance set forth in 22 Pa.Code Ch. 5 (relating to curriculum) or subsequent regulations promulgated to replace 22 Pa.Code Ch. 5 or failure to meet any performance standard set forth in the written charter ..." 24 P.S. § 17–1729–A(a)(2).[4] "Chapter 4 of Title 22 of the Pennsylvania Code sets forth the PSSA as the measure of student and school performance and sets standards of performance to be measured by the PSSA, including proficiency. 22 Pa.Code §§ 4.2, 4.51(a), (b), (e)." *New Hope Academy Charter School v. School District of City of York*, 89 A.3d 731, 737 (Pa.Cmwlth.2014). "The Chapter 4 regulations also provide that the PSSA is designed to measure 'student and school performance consistent with the No Child Left Behind Act [5].' 22 Pa.Code § 4.51(a)(1)." *Id.* "The No Child

Left Behind Act requirements that Chapter 4 references, including proficiency as the measure for AYP ... are set forth in 22 Pa.Code Chapter 403, 22 Pa.Code §§ 403.1–403.3." *Id.* "Proficiency as measured by PSSA test scores is therefore a Chapter 4 student performance requirement." *Id.* We have held that a "consistently low percentage of students scoring proficient or better on the PSSA constitutes a failure to satisfy Chapter 4 student performance requirements and is a valid ground for nonrenewal of a school's charter ... where the charter school's proficiency rates are lower than those of its school district's schools as a whole and no clear pattern of significant improvement in its PSSA results is shown." *Id.; Ronald H. Brown Charter School v. Harrisburg City School District*, 928 A.2d 1145, 1152–53 (Pa.Cmwlth.2007).

Moreover, with regard to whether the PSSA tests can be used to measure its students' performance, Career Connections' own charter application stated that students will be given standardized assessment in grade 11 "as part of [Career Connections'] commitment to adhere to and prepare students to meet the standards of the [District], the Commonwealth of Pennsylvania, and for comparative analysis on National norm-referenced assessments." (Reproduced Record (R.R.) at 839a). The CAB interpreted this statement as establishing a goal of meeting the requirements for student performance set forth in the PDE's regulations.

### B.

As to whether Career Connections was making adequate performance progress,

4. Chapter 5 of Title 22 of the Pennsylvania Code, to which Section 1729–A(a)(2) refers, has been repealed and replaced by 22 Pa. Code Chapter 4. The regulations referenced in Section 1729–A(a)(2) are therefore those set forth in 22 Pa.Code Chapter 4.

5. 20 U.S.C. §§ 6301–7941.

the CAB found that Career Connections has failed to make AYP with respect to Reading and Math for seven consecutive school years, 2005–2006 through 2011–2012. (*See* CAB's October 7, 2013 Opinion at 65–66).[6] As a result of continually failing to make AYP, Career Connections' AYP status level has declined from Warning status for the 2005–2006 school year to Corrective Action I status for the 2011–2012 school year.[7] Moreover, relying on PSSA scores from Career Connections' top 12 feeder schools, the CAB found that "[o]verall, [Career Connections] has not performed as well as other School District charter schools or as well as the majority of other School District high schools." (CAB's Finding of Fact ¶ 128). As a result, the CAB found that Career Connections "has continuously failed to meet the State's standards of proficiency" and, therefore, that Career Connections failed to comply with the student performance standards set forth in the Chapter 4 regulations and the school's charter. (CAB's October 7, 2013 Opinion at 66). We find no error in the CAB's determination.

Contrary to Career Connections' argument that the CAB improperly focused on its PSSA scores, we have specifically held that it is "within the [CAB's] prerogative to rely on PSSA results" in determining whether a school has shown improvement in its students' performance. *Ronald H. Brown Charter School*, 928 A.2d at 1153. Career Connections attempts to distinguish *Ronald H. Brown Charter School* on the basis that the non-renewal in that case

was premised upon a material violation of performance standards set forth in the school's charter. Ignoring that these performance standards were in its charter, nowhere in *Ronald H. Brown Charter School* did we state, as Career Connections asserts, that the CAB cannot use PSSA results to refuse to renew a charter. Additionally, as the CAB noted, Career Connections' argument that it is gradually improving is belied by the fact that its AYP status has deteriorated from Warning status in 2005 to Corrective Action I status in 2012. With respect to Career Connections' academic performance in comparison to its feeder schools, the CAB specifically found that "except for 2010 Math PSSA scores, the majority of the 12 top feeder schools outperformed Career Connections." (CAB's October 7, 2013 Opinion at 71). Accordingly, because there was substantial evidence that Career Connections did not show improvement in its students' performances and it was within the CAB's discretion to rely on the PSSA results, we agree with the CAB that this was a ground for non-renewal of Career Connections' charter.

## II.

Career Connections also alleges that it did not commit material violations of its charter. Specifically, Career Connections contests the CAB's conclusions regarding Career Connections': (A) academic calendar and daily instructional schedule; (B) interdisciplinary curriculum; (C) internship component; and (D) course offerings.

---

6. For example, as the CAB explained, in the most recent school year for which data is available, 2011–2012, the AYP target for Math was 78%, but only 36.5% of Career Connections' students scored proficient or better; while the AYP target for Reading was 81%, only 50.8% of Career Connections' students scored proficient or better. (*See* CAB's October 7, 2013 Opinion at 65–66).

7. If a school does not achieve AYP in a given year, the school is categorized to a lower AYP status level, with the progression of AYP status levels, from highest to lowest, as follows: Making AYP; Warning; School Improvement I; School Improvement II; Corrective Action I; Corrective Action II. (CAB's Finding of Fact ¶ 118).

## A.

■ Career Connections' charter application stated that the school would offer two alternative daily instructional schedules—one from 8:15 a.m. to 2:15 p.m., and the second from 10:45 a.m. to 4:45 p.m. ("flexible daily schedule"). The charter application asserted that this arrangement would enable Career Connections to better address problems some students might face related to transportation, child care or employment, and would better position Career Connections to develop job shadowing, mentoring and internship opportunities. Career Connections' charter application also stated that it would divide the school year into two semesters of three terms each, with a one-week break between each term, creating a 47–week school year. The application cited several advantages to this scheduling approach, including less likelihood of teacher and student "burnout;" greater opportunity for attainment of non-academic goals, remedial services and teacher training as a result of the breaks between terms; and less likelihood of "learning loss" due to the reduction in the summer break. (R.R. at 833a).

With respect to the flexible daily schedule, the CAB found that Career Connections only utilized such a schedule through the 2004–2005 school year, and that Career Connections utilized that schedule in order to separate younger students from older students, rather than for the reasons set forth in the charter application. With respect to the academic calendar, the CAB found that at some point after the school's initial years of operation, Career Connections adopted a traditional two-semester, four-term calendar. The CAB found no evidence in the record to demonstrate that Career Connections ever sought the District's approval to make either change, and

concluded that such actions were material violations of the charter.

Career Connections does not dispute that it stopped utilizing the flexible daily schedule and two-semester, three-term academic calendar, but argues that these changes were not material violations of its charter. Career Connections argues that it was justified in making the daily schedule and calendar modifications in order to address transportation problems facing some students and to avoid behavioral and academic regression. It contends that although it never formally presented amendments to its charter to make these changes, the District was aware of and never objected to either change until the current non-renewal proceedings.

Under Section 1720–A of the CSL, 24 P.S. § 17–1720–A, a charter school's "written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees." This Court discussed amendments to terms of a charter in *Northside Urban Pathways Charter School v. State Charter School Appeal Board*, 56 A.3d 80, 85–86 (Pa.Cmwlth. 2012). We explained:

> A charter school's application, which is ultimately incorporated into the terms of the charter, is a very detailed document. Inevitably, though, these details will have to be adjusted during the life of a school. . . . [For example,] [i]f a charter school states in its charter application that it will be located in a particular building, then that provision becomes part of the school's charter. If the school changes its location during the term of the charter **without amending its charter, it is subject to closure under Section 1729–A(a)(1) of the Charter School Law**, 24 P.S. § 17–1729–A(a)(1). (Footnote omitted) (emphasis added).

Here, the daily schedule and academic calendar proposed by Career Connections in its charter application were incorporated into the terms of the charter and, thus, legally binding when the District granted the initial charter. In order to change those terms, Career Connections was required to amend its charter. Because it changed the daily schedule and academic calendar without doing so, it is subject to closure under Section 1729–A (a)(1) of the CSL, regardless of whether the District knew of the changes. These changes to the daily schedule and academic calendar are clearly material, especially given that Career Connections touted its flexible daily schedule and 47–week school year as "innovations that . . . will enhance the educational program." (R.R. at 833a). Accordingly, the CAB did not err in holding that those modifications by Career Connections constituted material violations of its charter.

**B.**

█ Career Connections' initial charter application provided that "[t]he curriculum will be comprised of courses that will use an interdisciplinary or integrated approach to classroom instruction with 'applied' learning experiences for students." (R.R. at 821a). The application proposed to have an interdisciplinary approach to language arts and social studies, mathematics, sciences and life skills and the humanities.

The CAB found that while teachers and staff at Career Connections implement interdisciplinary *activities*,[8] the evidence is insufficient to support the conclusion that Career Connections has the interdisciplinary curriculum promised in its charter application. The CAB based that conclusion primarily on the testimony of Michael Dreger (Dreger), the District's K–12 social studies supervisor and a member of the Review Team. Dreger testified that during his review of Career Connections' different curriculum areas, interviews with parents and classroom observations, he did not note any interdisciplinary approaches whatsoever and did not see any "applied learning experiences" (i.e., hands-on experiences in science labs, analyzing documents, writing poetry) as promised in the charter application. (R.R. at 211a–214a, 227a).

Career Connections first contends that the CAB erred in placing the burden on Career Connections of proving that it utilizes an interdisciplinary curriculum. In support of that argument, Career Connections focuses on the following language from the CAB's opinion: "[i]n light of the lack of evidence supporting the implementation of a consistent interdisciplinary curriculum with the promised subject area linkages, the record supports the conclusion that Career Connections has committed a material violation of its charter because it does not provide an interdisciplinary curriculum but rather only provides interdisciplinary activities." (CAB's October 7, 2013 Opinion at 51). Career Connections also argues that the

---

8. Examples of interdisciplinary activities at Career Connections cited by the CAB include:

%7 A unit combined the study of careers, English, Social Studies and Economics by studying *Nickel and Dimed.*

• An Ancient Greece unit required students to read Greek mythology in English class and research Greek culture in History class with multiple components of reading, writing and research.

• An acid rain unit involved Chemistry labs and English technical writing lessons.

• A Healthy Living unit incorporated Careers, Computers, Civics, Algebra, Earth and Space Science, English, and Physical Education topics.

(CAB's October 7, 2013 Opinion and Order at 49–50).

CAB capriciously disregarded evidence that Career Connections actually implements an interdisciplinary curriculum.

■ Section 1729–A(c) of the CSL provides, in relevant part, that the "local board of school directors shall . . . present evidence in support of the grounds for revocation or nonrenewal stated in its notice." 24 P.S. § 17–1729–A(c). Pursuant to that section, the District clearly has the burden of presenting evidence in support of its decision to not renew the charter. We disagree with Career Connections' contention that CAB placed the burden of proof on Career Connections. While the above-quoted language from the CAB's opinion is somewhat confusing, the CAB clearly relied upon the testimony of the District's witness, Dreger, in reaching its conclusion that Career Connections lacked a consistent interdisciplinary curriculum. The "lack of evidence" cited by the CAB simply refers to the lack of interdisciplinary approaches Dreger witnessed. We also disagree with Career Connections' contention that the CAB disregarded its evidence purporting to demonstrate its interdisciplinary curriculum. The CAB did not disregard that evidence; it merely found that Career Connections' isolated interdisciplinary activities were not sufficient to constitute an interdisciplinary curriculum. Accordingly, the CAB did not err in holding that Career Connections lacked the interdisciplinary curriculum promised in its charter application.

### C.

■ Career Connections' charter application indicates that the school's primary focus "will be on School–to–Work . . ." (R.R. at 830a) and that one of the three core elements of School–to–Work is work-based learning. The application states that Career Connections will provide students with work-based learning opportunities through a number of different avenues, including internships, part-time jobs, co-ops and apprenticeships. As most recently stated in Career Connections' 2010–2011 Annual Report, the school's mission is to provide "small classes, an interdisciplinary curriculum, innovative teaching techniques, **and an internship component.**" (CAB's October 7, 2013 Opinion at 52) (emphasis in original). During the course of the renewal hearings, Career Connections emphasized that its internship students develop valuable "soft skills" (i.e., communication, responsibility, punctuality, teamwork, problem solving) and that the internships at work sites provide students with an outside-of-the-classroom environment that cannot be recreated in a classroom. However, the internship component is not universal because students who participate in Career Connections' dual enrollment program, which requires students to take two college classes each in the fall and spring semesters at the Community College of Allegheny County (CCAC), are exempt from the internship requirement.

The CAB found that by exempting dual enrollment students from the internship requirements, "Career Connections deprives those students of the value of work-based learning, the opportunity to develop those very valuable soft skills, and the opportunity to learn in an outside-of-the-classroom environment that cannot be recreated in a classroom." (*Id.* at 57). Because the "experience gained from dual enrollment does not parallel the experience gained from an internship" (*id.* at 58), the CAB concluded that "[Career Connections] has failed to offer valuable and meaningful learning experiences to **all** of its students through the use of the internship." (*Id.* at 59) (emphasis in original).

Career Connections argues that the opportunity to earn college credits through the dual enrollment program in courses

that introduce students to specific careers is entirely consistent with the school-to-work focus of its charter. Moreover, Career Connections contends that it provides the *opportunity* to participate in a worksite internship to all of its students, and that its charter imposes no requirement that every student does so.

While the school's mission statement indicates that part of its mission is to provide "an internship component," the charter itself does not require every student to enroll in an internship. As noted above, the charter application lists internships as just one of several different avenues for providing students with work-based learning opportunities. Moreover, the "Course Descriptions" section of the charter application, which lists "Career Internship" as a course offering, provides that the course is "[r]ecommended for juniors." (R.R. at 888a) (emphasis added). Although students enrolled in the dual enrollment program will arguably not have the same opportunity to develop the "soft skills" cited by the CAB as those students enrolled in a worksite internship, such skills are just one component of Career Connections' school-to-work focus. We also find compelling the undisputed fact that Career Connections does not deprive any students of the opportunity to participate in a worksite internship if they wish to do so. Accordingly, we find a lack of substantial evidence supporting the CAB's finding that Career Connections violated its charter by exempting dual enrollment students from completing a worksite internship.

### D.

■ Career Connections' charter application included a listing and description of the school's course offerings. However, the CAB found that several of those courses are missing from Career Connections' current course list. Specifically, the CAB found that Career Connections does not offer the following courses listed in its initial charter application: Cooperative Education, Career Cluster, Life Skills I, Life Skills II, Consumer Economics, Cultural Geography, Introduction to Computer Programming, Humanities I and Humanities II. While the CAB found that "the content of some of these courses continues to be provided but under another course title," it held that "[Career Connections] has no Consumer Economics course . . .; nor does [Career Connections] have a Humanities 1 or Humanities 2 course, or any equivalent that focuses on all of the components of those courses listed in the original charter application." (CAB's October 7, 2013 Opinion at 59–60) (citation omitted).

Career Connections argues that the substantive content of the Consumer Economics and Humanities courses is embedded in a multitude of other courses offered by Career Connections. We agree. The charter application's course description for "Civics and Consumer Economics" provides that the consumer economics component of the course would provide instruction on, *inter alia,* basic economic theory, including the law of supply and demand; saving, borrowing and spending; consumer behavior; and the role of government in the economy. The record demonstrates that courses currently being offered by Career Connections include Civics, which covers the topic of economics; Career Exploration III and Marketing, which both provide instruction on money management skills; and Introduction to Business, which covers economic concepts and systems. In addition to these courses, Career Connections offers online courses in Consumer Mathematics, Economics, Family and Consumer Sciences and Money Management. With respect to the Humanities courses, the charter application provided that these

classes would focus on, *inter alia,* music, theater, dance, athletics, television, cinema, studio art, poetry, photography and architectural design. The record demonstrates that Career Connections offers a variety of online courses focusing on these areas. Accordingly, we hold that the differences between the course offerings listed in the initial charter application and the current course offerings is not substantial enough to warrant nonrenewal of Career Connections' charter.

## Conclusion

Although we do not find that Career Connections' failure to require all students to complete a worksite internship or that the modifications of its course offerings constituted material violations of its charter, the remaining material violations, coupled with Career Connections' failure to meet student performance requirements, support the CAB's decision not to renew Career Connections' charter.

Accordingly, the CAB's order is affirmed.

### *ORDER*

AND NOW, this *19th* day of *May,* 2014, the order of the Pennsylvania State Charter School Appeal Board, dated October 7, 2013, at No. CAB–2012–12, is affirmed.