OPINION
JUSTICE BAER
This appeal requires us to examine the Charter School Law (“CSL”)[1] to determine the propriety of the charter amendment procedure adopted by the Commonwealth Court. We must also determine whether the Charter School Appeal Board (“CAB”) has jurisdiction over a school district’s failure to act on a charter school’s request to amend its charter to increase maximum student enrollment. Upon review of the CSL, we conclude that the statute does not set forth a procedure for amending the material terms of a charter or a standard for evaluating an amendment request, and the Commonwealth Court erred in creating the same. We further hold that the CSL does not provide for jurisdiction in the CAB for appeals from a school district’s action or inaction on a requested charter amendment. Absent legislative directive, we decline to expand the CSL to address these omissions and, instead, adhere to the statutory framework created by the General Assembly. Accordingly, we vacate the Commonwealth Court’s order remanding the matter to the CAB for review of the charter school’s amendment request. Our decision does not preclude a charter school from increasing its maximum student enrollment by written agreement of all parties to the charter, as provided in the charter itself, or by obtaining a new charter with an increased maximum student enrollment after satisfying the statutory requisites for such action.
I. Background
Appellant Philadelphia School District (“District”) is a school district of the first class that has been declared in distress under Section 691 of the Public School Code (“Code”), 24 P.S. § 6-691 (relating to a declaration of distress by the Secretary of Education). Pursuant to Section 696(a) of the Code (pertaining to the formation of a school reform commission for distressed school districts of the first class), the District is governed by Appellant School Reform Commission (“SRC”), which is a five-member instrumentality of the first class school district that exercises the powers of the school board. Appellee Discovery Charter School (“Discovery”) operates a charter school within the boundaries of the District under a five-year charter granted in 2003 and renewed in 2008, ending on June 30, 2013.
The charter provides that Discovery “may enroll students in grades K through 8 with a maximum of 620 students.” Charter for Discovery Charter School (“Charter”), April 16, 2008, Art. VT(A); Reproduced Record (“R.R.”) at 1408a. The Charter states that Discovery “acknowledges and agrees that neither the School District nor the Commonwealth of Pennsylvania shall have any obligation whatsoever to provide any funding in excess of the amount derived from the enrollment limits set forth in this Charter.” Id., Art. VI(B)(5); R.R. at 1408a.
The Charter further provides that Discovery shall operate its school only at 5070 Parkside Avenue, Philadelphia, that it shall not relocate the school to a different facility “without giving notice thereof to the *307 School District not less than sixty (60) days before the proposed ... relocation,” and that if the relocation “constitutes a material change,” it shall not relocate “without the prior written consent of the School District, which consent the School District shall not unreasonably withhold, condition or delay.” Charter, Art. IV(L); R.R. at 1406a. Finally, germane to this appeal, the Charter states “[t]his Charter may.not be amended, modified, supplemented or changed in any respect except by written agreement duly executed and signed by all Parties to this Charter.” Id. at Art. XVII(J); R.R. at 1423a.
Because Discovery’s enrollment applications far exceeded its maximum enrollment cap of 620 students, the charter school filed a request to amend its charter to gradually increase maximum enrollment to 1,050 students over a four-year period, amounting to a seventy percent increase in enrollment. Discovery also acquired land located three blocks from its Parkside Avenue address and began constructing a new building capable of accommodating more students, intending to relocate to that facility for the 2013-14 school year. In December of 2012, Discovery applied to renew its charter for a third five-year term and notified the District of its plans to move to the new facility.
In May of 2013, the District’s Office of Charter Schools recommended that Discovery be granted a third five-year charter, finding no deficiencies in the school’s academic performance and rating Discovery as acceptable with minor deficiencies in its organizational and financial health. Accordingly, on May 20, 2013, the District sent Discovery a draft charter agreement, which contained the existing Parkside Avenue address and the existing 620-student cap as set forth in the 2008 charter. Because the agreement did not permit an enrollment increase, Discovery refused to sign it, citing the CSL’s provision prohibiting a school district from unilaterally imposing a maximum student enrollment cap. See 24 P.S. § 17-1723-A(d)(l) (providing that “[e]nrollment of students in a charter school ... shall not be subject to a cap or otherwise limited ... unless agreed to by the charter school ... as part of a written charter pursuant to section 1720-A.”).[2]
Because Discovery did not agree to the enrollment cap contained in the draft charter agreement, the SRC did not act on Discovery’s renewal or amendment requests. Discovery continued to operate thereafter, albeit without a signed charter. On July 15, 2013, the District informed Discovery that the SRC would not vote on an enrollment increase for any charter school for the 2013-14 school year. In October 2013, the District sent Discovery correspondence indicating that Discovery was in violation of Section 1720-A of the CSL because it lacked a signed charter, see 24 P.S. § 17-1720-A (providing, inter alia, that a signed charter “shall act as legal authorization for the establishment of a charter school”), and that the failure to sign the charter that included the SRC’s authorized enrollment cap of 620 students would constitute grounds for suspension, nonrenewal or revocation of the Charter. Notwithstanding Discovery’s failure to sign the Charter, the SRC has taken no action to suspend or revoke the Charter.
Contending that the District denied its amendment request by failing to act upon it, Discovery filed a petition for appeal with the CAB on July 30, 2013, seeking an order granting the amendment to increase maximum student enrollment. On November 7, 2013, the District moved to quash the appeal for lack of jurisdiction, alleging that its inaction on the amendment request *308 was not appealable to the CAB. Discovery thereafter filed a second petition for appeal with the CAB on November 15, 2013, again asserting that the District’s refusal to act constituted a denial of the request for amendment and challenging, for'the first time, the constitutionality of the SRC’s resolutions suspending application of various provisions of .the Code.[3] The parties agreed that the matter would proceed on Discovery’s second petition for appeal, with the filings relating to the first petition remaining part of the record. The District thereafter moved to quash Discovery’s second petition for appeal for lack of jurisdiction, reiterating that neither its failure to act on the charter renewal application nor its failure to act on the amendment request constituted a decision ap-pealable to the CAB.
The CAB granted the District’s motion to quash, holding that the failure to act on Discovery’s amendment request did not constitute a reviewable action as the CAB’s jurisdiction is statutorily limited to decisions revoking or not renewing a charter. See State Charter Appeal Bd. Opinion (“CAB Opinion”), April 16, 2014, at 3 (citing 24 P.S. § 17-1729-A(d) (providing that the charter school may appeal to the CAB a decision of the local board of school directors to revoke or not renew a charter, and the CAB shall have exclusive review of such decisions)). The CAB relied upon the Commonwealth Court’s decision in Community Academy of Philadelphia Charter Sch. v. Philadelphia Sch. Dist. Reform Commission, 65 A.3d 1023 (Pa. Cmwlth. 2013), which held that the absence of formal action taken regarding a charter renewal request does not amount to a final, appealable determination. CAB Opinion at 3-4. The CAB further indicated that Discovery was seeking equitable relief, which an administrative appellate body lacks the authority to grant. Id.
The Commonwealth Court reversed. Discovery Charter Sch. v. Sch. Dist. of Phila., 111 A.3d 248 (Pa. Cmwlth. 2015). Preliminary, the court acknowledged that while it reviews agency decisions deferentially, jurisdictional issues are questions of law that are reviewed de novo. Id. at 252. The court observed that the CSL gives the CAB exclusive jurisdiction over a school district’s denial of a charter school’s initial charter application, as well as a school district’s decision to revoke or not renew a charter school’s charter. Id. (citing 24 P.S. §§ 17-1717-A(f), (i)(1) and 1729-A(d)).
Recognizing that the CSL does not authorize charter améndments, the court nevertheless reiterated its prior case law establishing that charter schools have a right under the CSL to seek amendments to their charters. Id. (citing Northside Urban Pathways Charter Sch. v. State Charter Sch. Appeal Bd., 56 A.3d 80, 84-87 (Pa. Cmwlth. 2012); Montessori Regional Charter Sch. v. Millcreek Twp. Sch. Dist., 55 A.3d 196, 201 (Pa. Cmwlth. 2012); and Lehigh Valley Dual Language Charter Sch. v. Bethlehem Area Sch. Dist., 97 A.3d 401, 404-06 (Pa. Cmwlth. 2014), appeal dismissed, 632 Pa. 654, 122 A.3d 1037 (2015)).[4] The Commonwealth Court further *309 explained that the aforementioned precedent holds that the CAB, by necessarily implication, has jurisdiction over appeals from the denial of charter amendments and reviews such denials in the same manner as it would review a decision revoking or not renewing a charter pursuant to Section 1729-A(d) of the CSL. Id. at 252-53 (citing Northside Urban Pathways, 56 A.3d at 85-87).[5]
The Commonwealth Court appreciated that the CSL sets forth a specific time period during which a school district must act on an initial charter application and affords the CAB jurisdiction to review the application if the school district fails to act within that timeframe, id. at 253 (citing 24 P.S. § 17-1717-A(d)-(g) (relating to school district’s procedure in considering and ruling upon a charter application)), but has no corollary provision directing when a decision on a charter amendment request must be rendered by the school district. Id. Thus, the court viewed the issue on appeal as whether the District’s failure to act on Discovery’s amendment request constitutes a denial of the amendment, notwithstanding the absence of a specific statutory deadline. Id.
In resolving this inquiry, the Commonwealth Court returned to its decision in Northside Urban Pathways and reiterated *310 the sentiments expressed therein — that the CSL “vests the [CAB] with jurisdiction over every significant decision involving a charter school,” id. (citing Northside Urban Pathways, 56 A.3d at 85); that CAB oversight is necessary to prevent local school boards from restricting the creation and growth of charter schools and defeating the legislative intent to provide expanded choices in public education, id.-, and that immunizing school districts’ denial of a charter amendment “would give school districts a veto power that is inconsistent with the overall purpose of the [CSL].” Id. (citing Northside Urban Pathways, 56 A.3d at 86-87). The court found that the reasons for finding that the CAB possesses jurisdiction over a school district’s denial of a requested charter amendment in Northside Urban Pathways likewise support a finding that the CAB has jurisdiction over a school district’s inaction on an amendment request.
Additionally, the Commonwealth Court rejected the District’s reliance on its previous holding in Community Academy that a school district’s inaction on a renewal application does not constitute a final determination appealable to the CAB. The court viewed the Community Academy holding as being tethered to the charter school’s due process right to continue operation under its existing charter until the school district complies with the procedural protections required to revoke or not renew the charter. The court concluded that “absent recognition of a right to appeal such inaction to the [CAB] as a denial of the request for amendment, school districts could freely evade [CAB] review by simply refusing to vote on amendments that they do not wish to grant.” Id. at 254.
Turning to the facts presented, the Commonwealth Court found that Discovery requested the amendment in late 2012 for implementation in the 2013-14 school year, but the District took no formal action on the request. The court observed that the District expressed its disapproval of the amendment by acknowledging that it had decided to deny all requested charter School enrollment increases for that school year and indicating that it would not act on Discovery’s request unless the charter school signed a charter that included the existing enrollment cap. Id. at 255. Given these facts, the Commonwealth Court held that the District’s failure to take formal action constituted a denial of Discovery’s amendment application which was appeal-able to the CAB. Accordingly, it reversed the CAB’s quashal of Discovery’s appeal for lack of jurisdiction, and remanded the matter to the CAB to review Discovery’s amendment request in the same manner as it would review a school district’s decision to revoke or to not renew a charter under Section 1729-A of the CSL.
This Court granted allocatur to review: (1) whether, the Commonwealth Court erred by creating an extra-legislative scheme for amending a charter that is not contained in the CSL; (2) whether the Commonwealth Court erred by holding that a charter could be amended without evaluation of the CSL’s provisions governing initial charter applications; and (3) whether the Commonwealth Court erred by holding that the District should be deemed to have denied an amendment where it failed to act on it within an unspecified period of time, thereby forfeiting to the CAB its authority to review the amendment request. Discovery Charter Sch. v. Sch. Dist. of Phila., 135 A.3d 581 (Pa. 2016).
II. Parties’ Arguments
The District and the SRC (collectively “Appellants”) argue that the Commonwealth Court has created a procedure for amending charters that is not authorized by the CSL. Appellants posit that the CSL *311 contains detailed provisions for the creation of charters, defines the terms under which charter schools are authorized to educate students, and provides how those charters can be renewed or revoked. Notably absent from the statutory framework, they emphasize, is a procedure for amending a charter, a standard for evaluating an amendment request, or an appeal process applicable to a school district’s action or inaction on an amendment request.
Of particular significance, Appellants submit, is the absence of a provision directing the renegotiation of new charter terms when the charter period ends; instead, the CSL provides only for the charter’s revocation or renewal/non-renewal. See 24 P.S. § 17-1729-A(a) (providing that “[d]uring the term of the charter or at the end of the term of the charter, the local board of school directors may choose to revoke or not to renew the charter ... ”), Regardless of the policy reasons supporting the Commonwealth Court’s charter amendment process, Appellants argue that the court cannot, under its power of statutory construction, supply omissions in a statute. They emphasize that policymaking is an exercise in legislation, and not statutory interpretation.
To illustrate, Appellants assert that under the Commonwealth Court’s decisions in Northside Urban Pathways and its progeny, charter schools have an implicit statutory right to amend their charters to change material terms.[6] They further contend that these decisions dictate that a school district may not require a charter school that is seeking the amendment of a material term of its charter (here, to increase student enrollment by 70%) to satisfy the more stringent requisites for obtaining a charter under Section 1717-A(e)(2) of the CSL,[7] but instead must ap *312 ply the statutory criteria for revocation/nonrenewal of a charter under Section 1729-A, and grant the requested “amendment” so long as the charter school has not engaged in conduct that warrants revocation or nonrenewal of its charter. Additionally, Appellants maintain that the Com-: monwealth Court’s decision requires school districts to entertain an amendment request promptly (which time period is undefined) and if the district fails to do so, the inaction is deemed a denial of the amendment, which is appealable to the CAB for review of the amendment request in the first instance.
Appellants find this approach untenable for several reasons. First, Appellants point out that the Commonwealth Court’s amendment procedure conflicts with the express terms of the Charter, Which are legally binding on the parties. See 24 P.S. § 17-1720-A(a) (providing, inter alia, that 'the “written charter shall be legally binding on both the local board of school directors of a school district and the charter school’s board of trustees”). As noted, Discovery’s 2008 charter states “[t]his Charter may not be amended, modified, supplemented or changed in any respect except by written agreement duly executed and signed by all Parties to this Charter.” Charter, Art. XVIII(J); R.R. at 1423a. Appellants contend that they did not enter into a written agreement to modify the existing 620-student enrollment cap contained in the Charter; yet, the Commonwealth Court’s decision affords the CAB (as opposed to the District itself) authority to determine whether such increase in enrollment should be- permitted.
Second, Appellants challenge the Commonwealth Court’s utilization of the revocation/non-renewal standard, which offers no guidance as to whether the charter should be amended to allow for a 70% increase in maximum student enrollment. Instead, they contend the charter amendment request should be evaluated pursuant to the legislative requirements for obtaining a charter set forth at Section 171.7-A(e)(2), as there is no other legal basis , under which charter authority may be conferred. They posit that charter amendment requests should not be evaluated pursuant tp a lesser standard or. given less scrutiny than the initial charter application. Rather, Appellants assert, new or materially different terms may be added to a charter only if the -parties comply with the legislatively-mandated process in Section 1717-A(e)(2) for submission of an application to operate the charter school under those new or different terms. Appellants submit that application of the revocation/non-renewal standard ties the hands of school districts in charter amendment cases where it is not financially feasible for the district to pay the; costs ■■ incurred by a grant of the amendment, but where revocation or non-renewal of the charter is unwarranted.[8]
*313 Finally, Appellants challenge the Commonwealth Court’s “deemed denial” approach whereby the CAB has jurisdiction to review the charter amendment request when the school district fails to take action. They emphasize that the CSL affords the CAB jurisdiction in only two scenarios: (1) appeals involving new charter applications; and (2) appeals from revocation/non-renewal decisions — neither of which encompasses charter amendments. Appellants maintain that the Commonwealth Court cannot confer jurisdiction where the legislature has not. Further, they argue, the intermediate appellate court cannot create a “deemed denial” rule' applicable to charter amendment requests when the legislature adopted such rule only in connection with a school district’s failure to act on an initial charter application. See 24 P.S. § 17-1717-A(g) (providing that “failure by the local board of directors to hold a public hearing and to grant or deny the application for a charter school within the time periods specified ... shall permit the applicant for a charter to file its application as an appeal to the appeal board”).
Given the lack of a statutory period during which a school district must act on an amendment request, Appellants contend that the “deemed denial” approach is both unauthorized and unfair as it transfers to the GAB the school district’s authority to make maximum student enrollment determinations. Because the CSL is silent as to the forum for review of charter amendment decisions, Appellants assert that Local Agency Law would fill any gap, providing review in the courts of common pleas.
Appellants summarize their position as not seeking to preclude charter amendments altogether, but to guarantee that the appropriate lens through which to consider material amendments to a charter is the same one used to examine an initial charter application. Reply Brief for Appellants at 14. Accordingly, they request that we reject the charter amendment approach set forth by the Commonwealth Court below and in Northside Urban Pathways and its progeny and remand the case to the District for it to consider-Discovery’s charter amendment request under the standard applicable to a charter application. Appellants reiterate their position that any subsequent review of their decision on Discovery’s requested amendment would be conducted by the court of common pleas pursuant to Local Agency Law. See 2 Pa. C.S. § 752 (providing that “[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)).[9]
*314 In response, Discovery urges this Court to affirm the Commonwealth Court’s holding that a charter school has an implied statutory right to amend the material terms of its charter, that the appropriate criteria to evaluate a charter amendment request are the renewal/revocation standard set forth in Section 1729-A of the CSL, and that the SRC’s refusal to act on an amendment request constitutes a “deemed denial” that is appealable to the CAB.[10]
Discovery contends that Northside Urban Pathways and its progeny, which held that charter schools have an implicit statutory right to amend their charters, were correctly decided. In particular, Discovery relies on the reasoning in Northside Urban Pathways that a charter is a license and any adverse governmental decision with respect to a license must be subject to review under due process, and that a charter will inevitably have to be adjusted during the life of the school because it is a comprehensive document reflecting all aspects of the school. Prohibiting charter amendments, Discovery submits, would destroy the independence that the legislature created for charter schools, see 24 P.S. § 17-1702-A (declaring that the General Assembly enacted the CSL to provide opportunities to establish and maintain schools that operate independently from the existing school district structure), and would provide school districts with absolute, unreviewable discretion over a charter school’s operations in violation of the CSL. Further, they maintain, the 2002 amendments to the CSL recognize that a charter may be amended. See 24 P.S. § 17-1750-A(e) (providing that a cyber school’s charter “shall be amended as needed to reflect the requirements of this subdivision” [relating to the legislative change transferring authority over cyber charter schools from the local board of school directors to the Pennsylvania Department of Education].
Regarding the appropriate standard to apply to amendment requests, Discovery contends that the Commonwealth Court in Northside Urban Pathways and its progeny con-ectly applied the standards for rev- *315 oeation/non-renewal of a charter provided in Section 1729-A of the CSL, which include the following grounds for nonrenewal: (1) material violations of the charter; (2) failure to meet student performance requirements; (3) failure to meet accepted fiscal management requirements; or (4) violations of the CSL or other law from which the charter school has not been exempted. Contrary to Appellants’ contentions, Discovery submits, applying the criteria for a new charter to a charter amendment request would be overly burdensome and would create absurd results. As an example, Discovery posits that if the charter school’s building was damaged and immediate relocation was necessary, it would be absurd to create law providing that a charter school could not change its school building without submitting a new charter application because the location of the school is a material term of the charter.
Discovery also urges this Court to affirm the Commonwealth Court’s holding that protracted inaction by the school district constitutes a denial of a requested charter amendment and is appealable to the CAB. It argues that school districts should not be permitted to thwart the charter amendment process by simply failing to take formal action on an amendment request, particularly where the district’s actions demonstrate its intent to deny the request. Discovery contends that Appellants’ alternative suggestion that a charter school could appeal the district’s denial/inaction to the common pleas court under the Local Agency Law is unworkable. It reasons that such a process would eliminate the neutral fact-finding function of the CAB, as the CAB has de novo review over the school district’s denial of an amendment, whereas the common pleas court, under the Local Agency Law, would be bound by any facts made by the school district that were supported by substantial evidence. See 2 Pa.C.S. § 754(b). Discovery maintains that the Legislature granted the CAB de novo review because it acknowledged that school districts are biased against charter schools due to the financial obligations they create, and that a neutral fact finder such as the CAB is necessary.
Discovery views Appellants’ argument that the SRC did not deny the amendment as mere “bureaucratic semantics,” considering that the District sent Discovery a letter stating that “the SRC has established a maximum authorized enrollment for your Charter School of 620 students.” Brief for Appellee at 52 (citing R.R. 591a-593a). It asserts that this is clear evidence of a denial of the requested amendment to expand the enrollment cap. Discovery reasons that the “deemed denial” procedure adopted by the Commonwealth Court is appropriate as it is identical to that in the CSL applicable to original charter applications. See 24 P.S. § 17-1717-A(g) (providing that “failure by the local board of directors to hold a public hearing and to grant or deny the application for a charter school within the time periods specified ... shall permit the applicant for a charter to file its application as an appeal to the appeal board”).
Further, Discovery attempts to dispel Appellants’ contention that the Commonwealth Court afforded school districts no guidance as to the time period during which a school district must act upon a requested charter amendment. To the contrary, it argues, the Commonwealth Court clearly held that when a request has been made for an amendment for a particular school year, failing to consider the request before that school year ends constitutes a denial. See Discovery Charter School, 111 A.3d at 255 (finding that the District’s failure to list the amendment request to be addressed at the SRC meeting during the six months remaining in the 2012-13 school year and the more than eight *316 months before the start of the 2013-14 school year constitutes a denial of an amendment over which the CAB has jurisdiction).[11] Accordingly, Discovery requests that we reject Appellants’ arguments and affirm the Commonwealth Court.[12]
III. The Charter School Law
The issues presented herein require interpretation of the CSL; thus, they are issues of law, over which our standard of review is de novo and our scope of review is plenary. Johnson v. Lansdale Borough, 146 A.3d 696, 709 (Pa. 2016). When examining the CSL, we keep in mind the rules of statutory interpretation, including that a court’s primary goal in interpreting a statute is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C,S. § 1921(a). “When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.” Id. § 1921(b). Additionally, courts construe every statute, if possible, to give effect to all its provisions. Id. § 1921(a).
The CSL was enacted in 1997 to create and maintain schools that operate independently from the existing school district structure as a means to, inter alia, hu-prove pupil learning and increase learning opportunities, encourage the use of different and innovative teaching methods, and provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system. 24 P.S. § 17-1702-A. Section 1717-A sets forth a detailed procedure for obtaining a charter, including the filing of an application with the local board of school directors in the district where the charter school will be located. Id. § 17-1717-A(c). The application must include information on seventeen enumerated topics including, inter alia, the identification of the charter applicant; the name of the proposed school and the grades it will instruct; the proposed governing structure; the school’s mission, education goals, curriculum, assessment methods, admissions policy, discipline policies, community involvement, financial plan, and parental complaint procedure; a description of the physical facility; the proposed school calendar and length of school day; and the proposed faculty and professional development plan. Id. § 17-1719-A.
The CSL sets forth statutory time-frames during which the local board of school directors must hold a public hearing and render a final decision on the applica *317 tion. Id. § 17-1717-A(d), (e)(1). Germane to the instant case, where a local school board fails to hold a public hearing or take action to grant or deny the charter application within the specified statutory time period, the CSL deems the charter application denied and allows the charter, applicant to file its application as an appeal .to the CAB. Id. § 17-1717-A(g).[13] In such case, the CSL directs the CAB to .review the application and grant or deny it based upon the same criteria that the local board of school directors consider when evaluating a charter application. Id. Notably, these criteria are set forth in Section 1717-A(e)(2) and include: (1) consideration of the extent of demonstrated, sustainable support for the charter school plan by teachers, parents, arid other community members; (2) the capability of the charter school applicant to provide comprehensive learning experiences; (3) the extent to which the application considers the seventeen topics of information requested in Section 1719-A (relating to the contents of the charter application) and conforms to the legislative intent declared in Section 1702-A; and (4) the extent to' which the charter school may serve as a model for other public schools. Id. § 17-1717-A(e)(2).
Where the local school board takes action on a charter application within the statutory time period, approval of the application is accomplished through an affirmative vote of the majority of the board. id. § 17-1717-A(e)(4). Written notice of the decision grantirig or denying the application, and the reasons therefore, áre sent to the applicant. Id. § 17-1717-A(e)(5). Upon approval of the application, a written charter is developed, which, when signed, shall act as legal authorization for the establishment of the charter school, Id. § 17-1720-A(a). The charter is binding on both the local board of school directors and the charter school. Id. The charter may extend over a three or five-year period and may be renewed for five-year periods upon reauthorization. Id.
The GSL provides that a charter applicant may appeal the denial of a charter to the CAB, which has exclusive review over such matters. Id. § 17-1717-A(f), (i)(l). The CSL includes a detailed appellate procedure, requiring the applicant to obtain a certain number of school district residents’ signatures on a petition to appeal and present the petition to the common pleas court for a hearing on the sufficiency of the petition, after .which the trial court issues a decree establishing whether the petition is sufficient and transfers such decree to the CAB, Id. § 17-I717-A(i)(2)~ (5), The statute further sets forth the CAB’s standard and scope of review as well as a time period during which the CAB must meet and issue a written decision affirming or denying the appeal. Id. § 17-1717-A(i)(6)-(8). All decisions of the CAB are subject to appellate review by the Commonwealth Court. Id. § 17-1717-A(i)(10).
The CSL also sets forth a specific procedure for nonrenewal or termination of a charter, which the Commonwealth Court has imported into the charter amendment procedure the court adopted. Significantly, rather than providing for the renegotiation of charter terms at the expiration of the term, Section 1729-A states that during the term of a charter or at the expiration of the term, the local board of school directors may “revoke or not renew” a charter based on any of the following: one or more material violations of the terms of the written charter; failure to meet enu *318 merated student performance standards; failure to meet generally accepted standards of fiscal management or audit requirements; violations of the CSL or other laws from which the charter school has not been exempted; or a charter school’s conviction of fraud. Id. § 17-1729-A(a).
The CSL affords the CAB exclusive review of a decision revoking or not renewing a charter. Id. § 17-1729-A(d).[14] The CSL further provides that the CAB, in reviewing a decision to revoke or not renew a charter, “may consider the charter school plan, annual reports, student performance and employe and community support for the charter school in addition to the record.” Id Additionally, when reviewing a charter application that has been revoked or not renewed, the CAB “shall make its decision based on the criteria established in subsection (e)(2).” Id. § 17-1717~A(h).
IV. Discussion
Úpon review of the parties’ arguments, we agree with Appellants that the charter amendment approach adopted by the Commonwealth Court is simply not authorized by the CSL. As set forth in detail, supra, the Legislature enacted an exhaustive statutory framework governing charter authorization, renewal, and revocation. Included in that statutory scheme are specific time periods during which a school district must act upon a charter application, and the consequences of failing to act. Aso included are enumerated appellate procedures in accord with which a charter applicant can obtain review of the CAB’s decision. As noted cogently by Appellants, however, conspicuously absent from the statute is a procedure to amend the material terms of a charter, a time frame or substantive standard governing a local school board’s evaluation of an amendment request, or an appellate procedure conferring jurisdiction upon the CAB when a school district acts or fails to act on a charter amendment request.[15]
Regardless of any policy reasons which may favor the creation of a mechanism through which the material terms of a charter can be amended, it is not the province of the judiciary to augment the legislative scheme. See Burke v. Independence Blue Cross, 628 Pa. 147, 103 A.3d 1267, 1274 (2014) (holding that the court may not, under the guise of statutory construction, rewrite a statutory provision); Karoly v. Mancuso, 619 Pa. 486, 65 A.3d 301, 309 n.7 (2013) (acknowledging the “established precept that it is improper for this Court to supply legislative omissions”); Commonwealth v. Scolieri, 571 Pa. 658, 813 A.2d 672, 678 (2002) (stating that appellate courts should not “act as an editor for the General Assembly,” even where doing so would create an improved statute); Pap’s A.M. v. City of Erie, 553 Pa. 348, 719 A.2d 273, 281 (1998), rev’d on other grounds, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (recognizing that the judicial rewriting of a statute *319 would violate the separation of powers doctrine).
These precepts are all the more compelling where the proposed judicially-created procedure is inconsistent with the plain terms of the underlying statute. Here, the CSL created a detailed statutory scheme regarding, inter alia, the authorization of a charter school’s material terms and the jurisdiction of the CAB to review these terms through limited appellate process. Specifically, as discussed in detail, supra, the CSL contains a charter authorization procedure in Section 1717-A, requiring school districts to examine: the demonstrated sustainable support for the charter school plan by teachers, parents, and the community; the capability of the charter school to provide comprehensive learning; the extent to which the charter application considers information requested in Section 1719-A (enumerating seventeen separate topics of information required to be included in a charter application); the extent to which the charter application conforms to the legislative intent of the CSL; and the extent to which the charter school may serve as a model for other public schools. 24 P.S. § 17-1717-A(e)(2). In creating a charter amendment procedure that would authorize new charter terms, the Commonwealth Court adopted as amendment criteria Section 1729-A, entitled “Causes for nonrenewal or termination,” which sets forth, the grounds upon which a school district may revoke or not renew a charter in subsection (a) and the CAB’s review of a school district’s decision to revoke or not renew a charter in subsection (d). Given these extensive particularized criteria to delineate the specifics surrounding a new charter school, we fail to see how the judiciary can employ different criteria to adjudicate new material terms in substitution of those originally determined.
We agree with Appellants that the CSL’s provisions relating to the nonrenewal or termination of a charter have no application to a request to change the charter’s material terms. The parties point to no section of the GSL, and we have found none, that suggests that a charter school is entitled to amend the material terms of its charter so long as the school is performing in a manner that does not require revocation or nonrenewal of its charter. Significant to our determination is the absence of a provision directing the renegotiation of new charter terms when the charter period ends, which Appellant and the Commonwealth Court appear to imply exists. To the contrary, the CSL provides only for the charter’s revocation or renewal/non-renewal. See 24 P.S. § 17-1729-A(a) (providing that “[d]uring the term of the charter or at the end of the term of the charter, the local board of school directors may choose to revoke or not to renew the charter”).
Similarly, there is nothing to suggest that the General Assembly intended that the terms of a binding charter be disregarded in favor of a judicially-created “amendment” procedure which in this case would effectively create a new charter school in a different location with a substantially larger enrollment. Instead, the CSL provides that the “written charter shall be legally binding on both the local board of school directors of a school district and the charter school’s board of trustees.” 24 P.S. § 17-1720-A(a). As referenced, the Charter states: “[t]his Charter may not be amended, modified, supplemented or changed in any respect except by written agreement duly executed and signed by- all Parties to this Charter.” Charter for Discovery Charter School, April 16, 2008, Art. VI(A); R.R. at 1408(a). Appellants correctly assert that neither the District nor the SRC entered into a written agreement with Discovery to modi *320 fy the existing 620-student enrollment cap, to which both parties had consented. The Charter further states that Discovery “acknowledges and agrees that neither the School District nor the Commonwealth of Pennsylvania shall have any obligation whatsoever to provide any funding in excess of the amount derived from the enrollment limits set forth in this Charter.” Id., Art. VI(B)(5); R.R. at 1408a. In like vein, the parties agreed to the physical location of the charter school. These clear terms of the Charter cannot be ignored.
We similarly conclude that the language of the CSL fails to support the Commonwealth Court’s “deemed denial” approach under which a school district’s failure to act upon an amendment request is automatically appealable to the CAB. Initially, we note that this conclusion is consistent with our holding that the CSL as drafted by our Legislature does not provide for amendments. Moreover, as to this discrete argument, we cannot accept the judicial conferral of jurisdiction upon a tribunal where the Legislature did not so provide. The CÁB’s jurisdiction is statutorily limited to appeals from a school district’s denial of an application, 24 P.S. § 17-1717-A(i)(l); appeals from a district’s deemed denial of an application, id. § 17 — 1717— A(g); and appeals from a district’s revocation or nonrenewal of a charter, id. § 17-1729-A(d). Such limited jurisdiction cannot be extended by judicial interpretation to encompass a school district’s denial of or failure to take action upon a charter school’s request to amend the material terms of its charter.
The Commonwealth Court first held that the CAB has jurisdiction to entertain appeals from denials of charter amendment requests, regardless of the lack of express statutory authorization, in its 2012 decision in Northside Urban Pathways, supra. Asserting that the requirement of express legislative delegation is tempered by the recognition that an administrative agency possesses implied authority that is necessary to effectuate its mandate, id., 56 A.3d at 83 (citing Commonwealth v. Beam, 567 Pa. 492, 788 A.2d 357, 360 (2002)), the intermediate appellate court held that a school district has implied authority to consider and act upon a charter amendment proposed by a charter school. Id. at 84. The court relied primarily upon our decision in Burger v. Bd. of Sch. Directors of McGuffey School District, where we held that a school board had implicit authority under the School Code to suspend a school superintendent accused of serious misconduct prior to a hearing, notwithstanding that the removal provision of the School Code did not contemplate such action. Id, at 83-84.
■ The Northside Urban■ Pathways court reasoned that because the charter school has a protected interest in its charter, which has been held to constitute a government license, see id. at 84, any adverse governmental decision with respect to a license, including the denial of an amendment request, should be subject to review as a matter of due process. Id. The North-side- Urban Pathways court further deduced that the CAB could not fulfill its express mandate to oversee the opening and closing of charter schools without exercising jurisdiction over charter amendments, opining that, “[wjithout the oversight of the CAB, school districts could restrict the creation and growth of charter schools, thereby defeating the legislative intent of providing parents and students with expanded choices in public education.” Id. at 85, The intermediate appellate court concluded that to allow amendments with only review in the school district (and not appellate review by the CAB) “would give school districts a veto power that is incon *321 sistent with. the overall purpose of the Charter School Law.” Id. at 86-87.[16]
Having concluded that the CSL does not provide for the amendment of material terms of a charter, we have little difficulty rejecting the reasoning of N.orth-side Urban Pathways regarding the CAB’s judicially created jurisdiction over amendment appeals. We further decline to endorse the Commonwealth Court’s , holding below extending the Northside Urban Pathways reasoning to confer jurisdiction upon the CAB when the school district fails to act on an amendment request. Consistent with Judge Pellegrini’s dissenting position, we reiterate that the CSL does not provide for jurisdiction in the CAB over appeals involving charter amendments, whether they pertain to denials thereof or appeals from the school district’s failure to act upon a requested amendment, as occurred here.
We find this Court’s decision in Burger distinguishable. There, the School Code provision at issue authorized the removal of a superintendent from office for various enumerated offenses after a hearing and a majority vote of the school board directors. 839 A.2d at 1058 (citing 24 P.S. § 10-1080). The superintendent contended that this School Code provision did not authorize the school district to suspend him prior to a hearing. We rejected this contention, holding that the School Code’s removal provision pertaining to superintendents did not divest the local school board of its implicit authority to suspend a superintendent accused of serious misconduct, even without pay and benefits, within the constraints of procedural due process. 839 A.2d at 1061. Here, however, the .CSL enumerates specific instances when an appeal to the CAB may be taken, such as in a charter application appeal or an appeal relating to the revocation or noiirenewal of a charter, and sets forth a particular time period whereby inaction on an initial charter application will be considered a deemed denial appealable to the CAB; yet, contains no corresponding provision relating to amendment requests. We cannot ignore this Legislative silence because when interpreting a statute, “we must listen attentively to what the statute says, but also to what it does not say.” Johnson v. Lansdale Borough, 146 A.3d at 711.
Additionally, to the extent we agree with the Commonwealth Court’s observation in Northside Urban Pathways that a charter school has a property interest in its charter as issued that is subject to due process protection, 56 A.3d at 84, what Discovery seeks herein is to enforce terms that do not yet appear in the charter.[17] Although the independence of charter schools must be protected to improve pupil learning and broaden choices in education, 24 P.S. § 17-1702-Á, we cannot do so by substantively expanding the Legislative scheme.
We acknowledge that the absence of a statutory amendment procedure may prove burdensome to charter schools, particularly those that have succeeded in their education mission and seek to expand their operations. However, this appeal is not about the wisdom of Discovery’s charter *322 expansion request, but what we respectfully believe is the improper judicial creation of agency jurisdiction, substantive standards, and adjudicatory procedures for charter amendments when the Legislature has chosen not to include such provisions in the CSL.
For the reasons set forth herein, we vacate the order of the Commonwealth Court and reinstate the CAB’s order granting Appellant’s motion to quash Discovery’s appeal. Consistent with this opinion, Discovery may file with the SRC an application for a new charter that includes an increased maximum student enrollment to be located in a new facility.
Chief Justice Saylor and Justices Todd, Donohue, Dougherty, Wecht, and Mundy join the opinion.

. Act of June 19, 1997, P.L. 225, as amended, 24 P.S. §§ 17-1701-A-17-1751-A. The Charter School Law is part of the Public School Code.

. Discovery had agreed to the 620-student cap in its 2003 and 2008 charters.

. The SRC had adopted resolutions pursuant to Section 696(i)(3) of the Public School Code, 24 P.S. § 6-696(i)(3), suspending application of several School Code provisions, including Section 1723-A(d) of the CSL, 24 P.S. § 17-1723(A)(d), which requires charter school consent prior to imposition of an enrollment cap. This Court in West Philadelphia Achievement Charter Elem. Sch. v. School Dist. of Philadelphia, 132 A.3d 957 (Pa. 2016), held that the General Assembly exceeded its legislative authority in granting this suspension power; thus, Section 1723-A(d) remains applicable to the District. Discovery's constitutional challenge to the SRC’s resolutions is not at issue in this appeal.

. As discussed infra at 320-21, in Northside Urban Pathways, a charter school authorized *309 to instruct students in grades 6-12 sought to amend its charter to expand the school to include grades K-5 in another location. The school district denied the request, finding that due to the significance of the proposed changes, the charter school must file an application for a new charter, as opposed to a request to amend the existing charter. The CAB dismissed the charter school’s appeal, finding that it lacked jurisdiction over charter amendments. The Commonwealth Court reversed. Acknowledging that the CSL does not expressly contemplate charter amendments, the court held that, by necessary implication, agencies have implied powers to fulfill their express mandates and the CAB cannot fulfill its express mandate to oversee charter schools without also exercising jurisdiction over charter amendments. The court found support for its holding in Burger v. McGuffey Bd. of Sch. Directors, 576 Pa. 574, 839 A.2d 1055 (2003), which held that a school board had implicit authority under the School Code to suspend a school official accused of serious misconduct prior to a hearing, notwithstanding that the removal provision of the School Code did not expressly contemplate such action.
Judge Pellegrini dissented in Northside Urban Pathways, opining that the CSL does not authorize a charter school to amend its charter to create a separate school at another location without first submitting a charter application for such facility. The dissent found that the CAB does not possess jurisdiction to consider the appeal of a school district’s ,denial of a. charter amendment request because the CAB's statutory jurisdiction extends only to appeals involving charter applications and appeals from a district's revocation or non-renewal of a charter. In the dissent's view, an appeal of any other action by a school district involving a charter school should be lodged in the court of common pleas of the county in which the district is located under the Local Agency Law, 2 Pa.C.S. §§ 551-555, 751-754,

. Section 1729-A(d) provides as follows with respect to appeals to the CAB from the revocation or non-renewal of a charter:
Following the appointment and confirmation of the appeal board, but not before July 1, 1999, the charter school may appeal the decision of .the local board of school directors to revoke or not renew the charter to the appeal board. The appeal board shall have the exclusive review of a decision not to renew or revoke a charter. The appeal board shall review the record and shall have the discretion to supplement the record if the supplemental information was previously unavailable. The appeal board may consider the charter school plan, annual reports, student performance and employe and community support for the charter school in addition to the record. The appeal board shall give due consideration to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision[.]
24 P.S. § 17-1729-A(d).

. As referenced supra at 308-09, this progeny includes Montessori, which the Commonwealth Court decided on the same day as Northside Urban Pathways, and Lehigh Valley, which was decided two years later. In Montessori, the Commonwealth Court relied upon Northside Urban Pathways to hold that the CAB has jurisdiction in disputes arising from charter amendment applications. The court in Montessori further endorsed the view that a school district may not require a charter school to satisfy the statutory requisites for a new charter when it sought to amend its charter to expand student enrollment in a new facility. Judge Pellegrini dissented, opining that "there is simply no provision in the CSL authorizing Montessori to create a separate charter school facility by mere amendment to its charter without first submitting an application to the District.” 55 A.3d at 206.
At issue in Lehigh Valley was whether the CSL authorized a charter school to amend its charter to operate its school at a second location. The CAB answered this inquiry in the negative, and the Commonwealth Court reversed. As relevant here, based on Northside Urban Pathways and Montessori, the court held that "a charter school may amend the material details contained within its original charter, including changing a charter school’s location or adding a second location of a charter school.” 97 A.3d at 406. Thus, the court remanded to the CAB for it to review the school district’s denial of the amendment request utilizing the revocation/non-renewal standard in Section 1729-A(d) of the CSL. Judge Pellegrini again dissented, opining that a charter school may not operate two or more schools under one charter.

. Section 1717 — A(e)(2) provides:
(2) A charter school application submitted under this article shall be evaluated by the local board of school directors based on criteria including, but not limited to, the following:
(i) The demonstrated, sustainable support for the charter school plan by teachers, parents, other community members and students, including comments received at the public hearing held under subsection (d).
(ii) The capability of the charter school applicant, in terms of support and planning, to provide comprehensive learning experiences to students pursuant to the adopted charter.
(iii) The extent to which the application considers the information requested in *312 section 1719-A [enumerating seventeen topics of information that must be included in a charter application including charter school grade levels, governance structure, mission, education goals, curriculum, assessment methods, admissions policy, discipline polices, community involvement, financial plan, parental complaint procedures, physical facilities, school calendar, school day length, and professional development plan] and conforms to the legislative intent outlined in section 1702-A.
(iv) The .extent to which the charter school may serve as a model for other public schools, ,
24 P.S. § 17-1717-A(e)(2).

. Appellants clarify their position in their re- . ply brief by asserting that a charter school need not give up its. existing charter and apply for an entirely new one, but that "the only logical and appropriate standards for consideration of an amendment request are those set forth in Section 1717-A of the CSL for *313 approval of a charter," Reply Brief for Appellants at 12-13.

. The Pennsylvania School Boards Association (“PSBA”) has filed an amicus brief in favor of Appellants, wherein it advocates for reversal of the Commonwealth Court's decision, contending that the intermediate appellate court "legislated” • a charter amendment and appeal process that is inconsistent with the explicit, comprehensive scheme created by the Legislature for the establishment and oversight of charter schools. Rather than having to submit to a rigorous review and hearing on criteria fundamental to granting an initial charter, the PSBA argues that the intermediate appellate court improperly established a standard of review which favors approval of virtually any requested amendment, regardless of how material the change, so long as the charter school is not performing at a level that warrants revocation or non-renewal of its charter. It also challenges as inconsistent with the CSL the Commonwealth Court’s holding that where a chartering school district does not act on an amendment request within a specified period of time, the failure to act constitutes an- appealable deemed denial.
*314 The Nation Association of Charter School Authorizers ("NACSA”), a national organization that assists entities that authorize charter schools, has also filed an amicus brief in favor of Appellants, reiterating the same sentiments in support of reversing the Commonwealth Court's decision. In addition, the NACSA recommends that charter authorizers examine the following criteria when reviewing a request to amend a charter to increase enrollment or to expand the school’s operations: (1) the charter school's vision and growth plan; (2) whether the charter school has the financial and organizational capacity to significantly expand operations without impacting the qualify of the program; (3) how the charter school will address staffing needs; and (4) how the proposed change will affect the school’s ability to continue performing at the same level of excellence in the future.

. Additionally, Discovery asserts that the only inquiry properly before this Court is the determination of whether the SRC's refusal to take action on its amendment request constituted a decision appealable to the CAB. It submits that Appellants did not challenge in the lower tribunals the propriety of the charter amendment procedure adopted by the Commonwealth Court in Northside Urban Pathways or the standard by which an amendment request should be evaluated. Thus, Discovery contends, to the extent this Court granted allocatur on those issues, we should dismiss them as improvidently granted. Appellants refute Discovery’s claim of waiver on the ground that they had no burden of issue preservation in the lower tribunals as they were the respondents before the CAB and the appellees in the Commonwealth Court. We agree with Appellants and conclude that all three issues are properly before this Court for review. See Commonwealth v. McMullen, 599 Pa. 435, 961 A.2d 842, 846 n.2 (2008) (holding that the general rule, that issues not raised in the lower court may not be addressed on appeal, applies only to appellants).

. Discovery additionally contends that failing to uphold the Commonwealth Court’s decision would undermine Section 1723 — A(d)(l) of the CSL, which requires the charter school’s consent to impose an enrollment cap. It submits that a school district could effectively impose a cap upon a charter school by refusing to act on the requested amendment. This argument need not be addressed further as it ignores that Discovery provided consent for the statutory cap when it obtained its charter. In any case, we ultimately find that there is no statutory mechanism for amending a charter that would require a school district to act within a certain period.

. Pacific Legal Foundation ("PLF”), a nonprofit organization established for the purpose of litigating matters affecting the public interest, has filed an amicus brief in support of Discovery, urging this Court to affirm the Commonwealth Court’s decision on the ground that a school district’s failure to act on an amendment request is the equivalent of a denial of that request. It reasons that if school districts can thwart charter school expansion with pocket vetoes, such deliberate inaction will frustrate the purpose of the CSL and stifle growth of charter schools. The PLF asserts that charter amendments are a crucial component of expanding educational choices because they provide for a means for successful charter schools to grow and school districts should not be permitted to obstruct the amendment process.

. The CAB consists of the Secretary of Education and six members who shall be appointed by the Governor with the consent of a majority of all the members of the Senate. Id. § 17-1721-A(a).

. Section 1729-A(d) is set forth in its entirety at 309, supra, n.5.

, We acknowledge that Section 1750-A(e) recognizes that a cyber school charter can be amended under circumstances unrelated to this case. That provision states that a cyber school’s charter “shall be amended as needed to reflect the requirements of this subdivision.” The subdivision referred to transfers authority over cyber charter schools from the local board of school directors to the Pennsylvania Department of Education. 24 P.S. § 17-1750-A(e). We find that Section 1750-A(e) has no significance in the instant appeal because the provision applies solely to cyber school charters, and more importantly, is limited to amending a charter to reflect a change in law and does not set forth a procedure for a party to alter a material term of the charter.

. As earlier noted, Judge Pellegrini's dissenting opinion contended that the CSL does not authorize a charter school to amend its charter to increase enrollment or to create a separate school at another location without first submitting a charter application. The dissent further opined that as a matter of law the CAB lacks jurisdiction to consider the appeal of a school district’s denial of a charter school’s amendment request because the legislature did not provide for such appeals.

. This is not a case where the amendment sought is necessary to continue operations under the current charter.