IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eastern University Academy Charter : 
School, :
              Petitioner :
 : No. 1167 C.D. 2019
         v. :
 : Submitted: May 11, 2020
School District of Philadelphia, :
           Respondent :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED: July 10, 2020

Eastern University Academy Charter School (the Academy) petitions for review of the August 14, 2019 order of the Commonwealth of Pennsylvania Department of Education, State Charter School Appeal Board (CAB), affirming the School Reform Commission of the School District of Philadelphia's (SRC) decision not to renew the Academy's Charter.[1]

---

[1] The Charter School Law, Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17-1725-A. The CSL amended Article XVII-A of the Public School Code of 1949 ("School Code"), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101–27-2702. The Charter School Law was enacted in 1997

> to create and maintain schools that operate independently from the existing school district structure as a means to, *inter alia*, improve pupil learning and increase learning opportunities, encourage the use of different and innovative teaching methods, and provide parents and pupils with expanded choices in the types of educational opportunities

<u>The Academy's Stated Mission to Provide a</u>
<u>"College-Integrated Learning Experience"</u>
<u>Through its Partnership with Eastern University</u>

The Academy was founded by Eastern University, a co-educational Christian University located in St. Davids, Pennsylvania, near Philadelphia. In 2009, the School District of Philadelphia (School District) granted the Academy a charter to operate a middle school and high school for grades 7 through 12, for a term of three years, beginning on July 1, 2009 (the Charter).

The Academy's mission is set forth in its original October 3, 2006 charter application (Original Application):

> *The mission of [the Academy] is to provide a wholistic, college-integrated learning community dedicated to the education of each student in the context of his/her unique interests. The school will provide students with an environment of excitement and early expectation through an integrative discovery-based learning experience that will develop logical reasoning, critical thinking, and purpose driving global citizens. The school will graduate self-directed, self-aware learners many of whom will have successfully mastered college level work.*

(Reproduced Record (R.R.) at 2885a) (italics in original.)

The Original Application represented that the Academy "will be a model of true integration of an Early College program where students prepare for and earn college credit prior to graduation." (R.R. at 2885a.) Eastern University, the Academy's "primary partner," was to provide "a wealth of academic resources, facilities resources, and personnel to the college in a merging of college and high school programs that is

_____

that are available within the public school system. 24 P.S. §17-1702-A.

*Discovery Charter School v. School District of Philadelphia*, 166 A.3d 304, 316 (Pa. 2017).

2

inherent in the school's Early College design." *Id.* at 2966a. Students were to take courses at Eastern University for college credit.

The Academy also partnered with Big Picture Schools to bring to the school its model of "intensive, student-interest-driven, project-based learning in the form of materials, professional development, technical assistance, and . . . other resources." *Id.*

"Unique characteristics" of the Academy included "the option of graduating in four years with a high school diploma and up to two years of transferable college credit," "collaboration between university faculty and high school teachers around core competencies and student learning outcomes," and a "Rigorous Early College 9-12 curriculum." *Id.* at 2887a-88a. The Original Application described the proposed charter school as follows:

> [The Academy] is an Early College model high school, with a rigorous approach to developing student mastery of competencies that provide the foundation of success in higher education coursework and higher level problem-solving. The Early College movement is a relatively recent outgrowth of the middle college movement, which was developed to educate high school students on college campuses in order to bridge the college attendance and success gap of many low income and minority students. The Early College model represents a true partnership between high school and colleges, which curricula at the high school directly aligned to college curricula, and opportunities and supports provided for students to earn college credit at their high school and on a college campus.
>
>      *      *      *
>
> The school will employ a performance-based progression, or competency based approach that will enable a student who has demonstrated competencies in a given area (*e.g.*[,] science) to move to college level work and study in that area,

3

even though he or she might not yet be ready for college in another area. The student seminar levels have been organized in the attached Curriculum such that by the time most students reach the end of 11th grade they will be working at the college entrance level, and thus may be taking college level courses either at [the Academy] or on the campuses of Eastern University. Content, skills and competencies at the highest levels (*e.g.*[,] Level 7) in the high school will be aligned to college syllabi and assessments in order for students to receive college credit for that course.

(R.R. at 2901a-02a.)

The Original Application represented that the Academy was designed to accelerate students above their average grade level quickly, in order to enable them to begin mastering the skills necessary for college level studies while they are still completing high school. *Id.* at 2986a. The Academy's stated goal was to "have 100% of . . . students take and pass at least one college class prior to graduation, and to have at least 20% of . . . students take and pass at least 10 college classes prior to graduation." *Id.* at 2981a. It was projected that 100% of the Academy's students would obtain 3 college credits prior to graduation, approximately 80% would obtain at least 6 college credits, and 20% would obtain 30 college credits. *Id.* at 2997a.

2012 Charter Renewal

On June 1, 2012, the SRC approved a renewal of the Academy's Charter for an additional five-year term, from July 1, 2012, until June 30, 2017 (the "2012 Charter"). The Academy's 2012 renewal application incorporated the Academy's Original Application (collectively, "Applications") and required the Academy to operate the charter school in conformity with the mission statement set forth in the Applications. (R.R. at 2456a.)

<u>Eastern University and Big Picture Schools'</u>
<u>Detachment from the Academy</u>

During the term of the 2012 Charter, the Academy and Big Picture Schools "part[ed] ways" due to "a strained relationship." (R.R. at 2726a, 2758a.) Also during the term of the 2012 Charter, there was a shift in the strategic goals of the Academy's founding partner, Eastern University. (R.R. at 2748a.) The relationship between the Academy and Eastern University ended because, in the Academy's words:

> The original steward of the vision of [the Academy] was former Eastern University President, Dr. David Black. Unfortunately, Dr. Black did not have much support from the faculty and administration for the charter school, and as a result, students were only given an opportunity to take 20 courses per semester. Once Dr. Black retired and a new president came aboard, the support for the school from the university dwindled since the new president did not have the same passion for Eastern University's partnership with [the Academy]. Clearly, the university thought that offering additional courses to students free of charge was not economically feasible.

(R.R. at 2758.)

The last time Academy students took a class at Eastern University was in the fall of 2015. In September 2016, the Academy and Eastern University entered into a Settlement Agreement and Release requiring the Academy to, *inter alia*, "change the name of the Charter School, removing any reference to [Eastern] University in its signage, websites, promotional literature, letterhead, or any other locations where the Charter School's name is used, by July 1, 2017." (11/8/17 Notes of Testimony (N.T.) 90, R.R. at 1725a.) The Academy's lease for its facilities at 3300 Henry Avenue expired in 2019, at which time the Academy needed to change its location. (R.R. at 2748a.)

<u>The Academy's 2016 Renewal Application</u>

In the fall of 2016, the Academy submitted a renewal application ("2016 Renewal Application"). The Academy reiterated that it was created as an "Early College program where all students would be equally prepared for postsecondary education and given the opportunity to engage in college-level dual enrollment programs while still in high school." (R.R. at 2746a.) The Academy conveyed that its partnerships with Eastern University and Big Picture Schools had ended. *Id*. at 2748a. The Academy indicated that it was currently "partnered with" the Community College of Philadelphia and Manor College "to provide [] students with opportunities for postsecondary credit during the 2016-2017 academic year." *Id.* The Academy represented that in the spring of 2016, its students began taking courses through the Community College of Philadelphia. It stated that students have taken a total of 170 credits and have successfully completed credits in American Government, Anthropology, Communications, Computer Science, Economics, English, Geology, Math, Political Science, Psychology, Social Work, Sociology, Theater, and Theology. *Id.* at 2723a. The Academy also stated that it will "continue to research the availability and opportunities available from other local institutions," and that it would now "assume responsibility for all related costs to students for taking these courses." *Id.* at 2746a-47a.

The Academy also summarized its students' academic performance for the 2012 Charter term. According to the Academy's 2016 Renewal Application, student performance on the Keystone and Pennsylvania System of School Assessment (PSSA) exams in 2012-2013 was "similar to the School District." *Id.* at 2721a. For the Algebra I Keystone, the Academy reported that it outperformed "peer, charter[,] and district schools," but scored below the average of peer, charter, and district

schools" for the Literature Keystone. *Id.* No students passed the Biology Keystone exam. *Id.* For the Math PSSA, Academy students "outperformed the district slightly and fell below peer and charter school averages by approximately 10 percentage points," and for the English/Language Arts PSSA, Academy students performed "very closely to the district average." *Id.*

For the 2013-2014 school year, the Academy reported that scores on the Biology Keystone increased, but PSSA Math and English scores decreased because its "best teachers in English and Math left due to offers at other schools for administrative positions." *Id.* at 2722a.

For 2015-2016, the Academy reported that its students exceeded the average proficiency levels of the School District in Biology and Literature. PSSA proficiency rates for English/Language Arts and Math remained unchanged. *Id.*

The Academy set forth multiple ways it proposed to improve its academic position, including hiring a full-time data coordinator and a math/science teacher coach to provide teachers with additional support for math/science. *Id.* at 2726a.

School District's Charter Schools
Office's Evaluation of the Academy's 2016
Renewal Application

The School District's Charter Schools Office (CSO) oversaw the evaluation of the Academy's 2016 Renewal Application and began its evaluation in the fall of 2016 by collecting data, conducting 60 site visits and developing a Renewal Rubric, through which it assigned points on a weighted scale to information submitted by the Academy. The CSO published a Renewal Report on June 1, 2017, in which it recommended that the Academy's Charter not be renewed. On June 15, 2017, the SRC adopted Resolution SRC-8 (the "Nonrenewal Notice"), after finding substantial

grounds not to renew the Academy's Charter. The Nonrenewal Notice listed the following 55 grounds for the proposed nonrenewal:

1. During the 2012-2013 school year, 52.96% of [Academy] students scored proficient or advanced on the Math PSSA exam. During the 2013-2014 school year, 34.71% of [Academy] students scored proficient or advanced on the Math PSSA exam. Thus, in the first two years of the charter term, the [Academy] had an 18.25 percentage point decrease in PSSA Math proficiency.

2. During the 2014-2015 school year, under the new Common Core-aligned PSSA, 0.95% of [Academy] students scored proficient or advanced on the Math PSSA exam. During the 2015-2016 school year, under the new Common Core-aligned PSSA, 0.00% of [Academy] students scored proficient or advanced on the Math PSSA exam. Thus, in the second two years of the charter term, the [Academy] had a 0.95 percentage point decrease in PSSA Math proficiency.

3. During the 2012-2013 school year, 50.03% of [Academy] students scored proficient or advanced on the Reading PSSA exam. During the 2013-2014 school year, 44.73% of [Academy] students scored proficient or advanced on the Reading PSSA exam. Thus, in the first two years of the charter term, the [Academy] had a 5.30 percentage point decrease in PSSA Reading proficiency.

4. During the 2012-2013 school year, 17.00% of [Academy] Grade 8 students scored proficient or advanced on the Science PSSA exam. During the 2015-2016 school year, 15.00% of [Academy] Grade 8 students scored proficient or advanced on the Science PSSA exam. Thus, in the four years of the charter term, the [Academy] had a 2.00 percentage point decrease in PSSA Science proficiency.

5. In no year of the Charter Term did the [Academy] have Math proficiency rates on the PSSA exam that met or exceeded charter school averages from the 2012-2013 school year

8

through the 2015-2016 school year. Charter sector average proficiency rates in Math on the PSSA for Grades 7-8 were 62.69% in the 2012-2013 school year, 58.50% in the 2013-2014 school year, 14.09% in the 2014-2015 school year and 13.60% in the 2015-2016 school year.

6. [The Academy's] Math proficiency rates on the PSSA exam did not meet or exceed School District school averages in the three most recent of four years during the Charter term, the 2013-2014, 2014-2015 and 2015-2016 school years. School District school average proficiency rates in Math on the PSSA for Grades 7-8 were 51.50% in the 2013-2014 school year, 15.39% in the 2014-2015 school year and 17.42% in the 2015-2016 school year.

7. In no year of the Charter Term did the [Academy] have Reading/ELA [(English Language Arts)] proficiency rates on the PSSA exam that met or exceeded charter school averages from the 2012-2013 school year through the 2015-2016 school year. Charter sector average proficiency rates in Reading/ELA on the PSSA for Grades 7-8 were 57.96% in the 2012-2013 school year, 60.74% in the 2013-2014 school year, 39.49% in the 2014-2015 school year and 39.24% in the 2015-2016 school year.

8. In no year of the Charter Term did the [Academy] have Reading/ELA proficiency rates on the PSSA exam that met or exceeded School District school averages from the 2012-2013 school year through the 2015-2016 school year. School District school average proficiency rates in Reading/ELA on the PSSA for Grades 7-8 were 52.86% in the 2012-2013 school year, 55.67% in the 2013-2014 school year, 34.89% in the 2014-2015 school year and 36.61% in the 2015-2016 school year.

9. In no year of the Charter Term did the [Academy] have Science proficiency rates on the PSSA exam that met or exceeded charter school averages from the 2012-2013 school year through the 2015-2016 school year. Charter sector average proficiency rates in Science on the PSSA for Grade

8 were 32.75% in the 2012-2013 school year, 32.26% in the 2013-2014 school year, 32.49% in the 2014-2015 school year and 30.96% in the 2015-2016 school year.

10. In no year of the Charter Term did the [Academy] have Science proficiency rates on the PSSA exam that met or exceeded School District school averages from the 2012-2013 school year through the 2015-2016 school year. School District school average proficiency rates in Science on the PSSA for Grade 8 were 27.94% in the 2012-2013 school year, 29.15% in the 2013-2014 school year, 28.40% in the 2014-2015 school year and 29.39% in the 2015-2016 school year.

11. During the 2012-2013 school year, 43.00% of [Academy] students scored proficient or advanced on the Algebra I Keystone exam. During the 2013-2014 school year, 20.00% of [Academy] students scored proficient or advanced on the Algebra I Keystone exam. During the 2014-2015 school year, 14.71% of [Academy] students scored proficient or advanced on the Algebra I Keystone exam. During the 2015-2016 school year, 34.50% of [Academy] students scored proficient or advanced on the Algebra I Keystone exam. Thus, in the four years of the charter term, the [Academy] had an 8.50 percentage point decrease in Algebra I Keystone proficiency.

12. [The Academy's] Algebra I proficiency rates on the Keystone exam did not meet or exceed charter school averages in three of four years during the Charter term, the 2013-2014, 2014-2015 and 2015-2016 school years. Charter sector average proficiency rates in Algebra I on the Keystone exam were 40.00% in the 2013-2014 school year, 41.69% in the 2014-2015 school year and 45.56% in the 2015-2016 school year.

13. [The Academy's] Algebra I proficiency rates on the Keystone exam did not meet or exceed School District school averages in three of four years during the Charter term, the 2013-2014, 2014-2015 and 2015-2016 school years. School

10

District school average proficiency rates in Algebra I on the Keystone exam were 43.00% in the 2013-2014 school year, 43.31% in the 2014-2015 school year and 48.19% in the 2015-2016 school year.

14. [The Academy's] Literature proficiency rates on the Keystone exam did not meet or exceed charter school averages in three of four years during the Charter term, the 2012-2013, 2013-2014 and 2014-2015 school years. Charter sector average proficiency rates in Literature on the Keystone exam were 55.00% in the 2012-2013 school year, 55.00% in the 2013-2014 school year, and 56.41% in the 2014-2015 school year.

15. [The Academy's] Literature proficiency rates on the Keystone exam did not meet or exceed School District school averages in three of four years during the Charter term, the 2012-2013, 2013-2014 and 2014-2015 school years. School District school average proficiency rates in Literature on the Keystone exam were 56.00% in the 2012-2013 school year, 56.00% in the 2013-2014 school year, and 54.36% in the 2014-2015 school year.

16. [The Academy's] Biology proficiency rates on the Keystone exam did not meet or exceed charter school averages in three of four years during the Charter term, the 2012-2013, 2013-2014 and 2014-2015 school years. Charter sector average proficiency rates in Biology on the Keystone exam were 18.00% in the 2012-2013 school year, 25.00% in the 2013-2014 school year, and 29.76% in the 2014-2015 school year.

17. [The Academy's] Biology proficiency rates on the Keystone exam did not meet or exceed School District school averages in three of four years during the Charter term, the 2012-2013, 2013-2014 and 2014-2015 school years. School District school average proficiency rates in Biology on the Keystone exam were 22.00% in the 2012-2013 school year, 28.00% in the 2013-2014 school year, and 33.33% in the 2014-2015 school year.

18. [The Academy's] building level School Performance Profile ("SPP") score was 53.0 for the 2012-2013 school year, 50.5 for the 2013-2014 school year, 50.7 for the 2014-2015 school year (high school grades only) and 54.3 for the 2015-2016 school year. All of the [Academy's] scores fall into the lowest SPP category of 60 or below.

19. [The Academy's] SPP building level cores were below the average for all School District schools including CTE [(Career and Technical Education)] programs for the 2012-2013, 2013-2014, and 2014-2015 school years. The average SPP score for all School District-operated schools including CTE programs was 57.5 in the 2012-2013 school year, 57.3 in the 2013-2014 school year (high schools only).

20. [The Academy's] SPP building level scores were below the charter sector average for Philadelphia brick and mortar charters for 2012-2013, 2013-2014, 2014-2015 and 2015-2016 school years. The average SPP score for the charter sector for Philadelphia brick and mortar charters was 66.0 in the 2012-2013 school year, 63.6 in the 2013-2014 school year, 57.6 in the 2014-2015 school year (high schools only), and 56.7 in the 2015-2016 school year.

21. [The Academy] did not meet the Pennsylvania academic growth standard, as measured by the Average Growth Index [("AGI")], in PSSA Math in the 2013-2014 school year, in the 2014-2015 school year and in the 2015-2016 school year.

22. [The Academy] did not meet the goals in its Charter for the Pennsylvania academic growth standard, as measured by the AGI, in PSSA Math for the Middle School grades in the 2013-2014 school year, in the 2014-2015 school year, and in the 2015-2016 school year.

23. [The Academy] did not meet the Pennsylvania academic growth standard, as measured by the AGI, in PSSA Reading/ELA in the 2012-2013 school year, in the 2013-2014 school year, and in the 2014-2015 school year.

12

24. [The Academy] did not meet the goals in its Charter for the Pennsylvania academic growth standard, as measured by the AGI, in PSSA Reading/ELA for the Middle School grades in the 2012-2013 school year, in the 2013-2014 school year, and in the 2014-2015 school year.

25. [The Academy] did not meet the Pennsylvania academic growth standard, as measured by the AGI, in Grade 8 PSSA Science in the 2012-2013 school year, in the 2013-2014 school year, in the 2014-2015 school year and in the 2015-2016 school year.

26. [The Academy] did not meet the goals in its Charter for the Pennsylvania academic growth standard, as measured by the AGI, in Keystone Algebra I in the 2012-2013 school year, in the 2013-2014 school year, and in the 2014-2015 school year.

27. [The Academy] did not meet the goals in its Charter for the Pennsylvania academic growth standard, as measured by the AGI, in Keystone Literature in the 2013-2014 school year and in the 2014-2015 school year.

28. For the 2012-2013 school year, the [Academy] received 4.54 points (out of 100) in the college readiness benchmark performance measure. This represents 1.82% of all Grade 12 students being college ready with either a 1550 on the SAT or 22 on the ACT.

29. For the 2013-2014 school year, the [Academy] received 0 points (out of 100) in the college readiness benchmark performance measure. This represents 0% of all Grade 12 students being college ready with either a 1550 on the SAT or 22 on the ACT.

30. For the 2014-2015 school year, the [Academy] received 5.32 points (out of 100) in the college readiness benchmark performance measure. This represents 2.13% of all Grade 12 students being college ready with either a 1550 on the SAT or 22 on the ACT.

31. For the 2015-2016 school year, the [Academy] received 4.63 points (out of 100) in the college readiness benchmark performance measure in 2015-2016. This represents 1.85% of all Grade 12 students being college ready with either a 1550 on the SAT or 22 on the ACT.

32. For the 2014-2015 school year, the [Academy] earned 0 points in indicators for closing the achievement gap for all students attending [the Academy] in the high school grades for a full year in both the Keystone Algebra I exam and the Keystone Literature exam.

33. For the 2014-2015 school year, the [Academy] earned 0 points in indicators for closing the achievement gap for all historically underserved students attending [the Academy] in the high school grades for a full year in Algebra I and 29.37 points (out of 100, in lowest category of 60 or less) in Literature.

34. For the 2015-2016 school year, the [Academy] received 0 points for indicators of closing the achievement gap for all students in Math.

35. For the 2015-2016 school year, the [Academy] received 0 points for indicators of closing the achievement gap for historically underperforming students in Math.

36. For the 2014-2015 and the 2015-2016 school years, the [Academy] received 0 points for student enrollment in AP [(Advanced Placement)], IB [(International Baccalaureate)] or college credit coursework in each of the four core academic areas. This is of particular note given that the [Academy] describes itself as an early college program.

37. [The Academy] did not meet the attendance goals in its Charter in the 2012-2013 school year, in the 2013-2014 school year, in the 2014-2015 school year, and in the 2015-2016 school year.

14

38. For the 2015-2016 school year, the most current year data is available, the percentage of [Academy] students attending 95% or more instructional days did not meet or exceed the School District school average or the Charter sector average.

39. [The Academy's] graduation rate declined over the course of the charter term by four percentage points from 83.05% in the 2013-2014 school year to 79.03% in the 2015-2016 school year.

40. [The Academy's] stated mission in its Renewal Application to provide a college integrated learning community where graduates will have successfully mastered college level work is inconsistently reflected in school operations and programming during the Charter term. During a three and a half[-]year founding partnership with Eastern University, the [Academy's] namesake, which ended in fall 2015, less than 100 students at the [Academy] participated in dual enrollment at Eastern University. In fall 2016, students were only enrolled in remedial, pre-college electives at the Community College of Philadelphia due to late registration by the [Academy]. The [Academy's] 2015-2016 graduating class had 0 students matriculate in the first fall after graduation at the founding partner post-secondary institution, Eastern University. Of the students graduating from the [Academy] in 2015-2016 eligible to enroll in the first fall, only 28 students enrolled in a four-year public or private university although the [Academy's] mission is to provide a "college-integrated learning community."

41. Components of [the Academy's] educational program as stated in the Renewal Application, such as high academic expectations, student engagement and student voice, were inconsistently reflected in school and classroom observations during the fall of 2016. In only 7% of classroom observations during the renewal site visits in November 2016 was student voice present at least 50% of the time. In only 10% of the same classroom observations did the teacher almost always or always convey high academic expectations for students. In only 7% of classroom observations were

15

virtually all students intellectually engaged in challenging content more than 90% of the time. These findings are based on at least 30 classroom observations during site visits in November 2016.

42. [The Academy] did not provide sufficient evidence of a school-wide screening process during the Term Charter, in violation of Chapter 711 of the Pennsylvania Code [(22 Pa. Code §§711.1-711.62)] and the [Academy's] Charter. As of the November 2016 renewal site visit, the [Academy] did not appear to use research based interventions and did not provide evidence of a monitoring system to track student progress.

43. Twenty percent (20%) of the Individualized Education Programs ("IEPs") maintained by [the Academy] and reviewed by the CSO during the onsite visit to the [Academy] in November 2016 did not have evidence of parent participation in the IEP process, in violation of Chapter 711 of the Pennsylvania Code [(22 Pa. Code §§711.1-711.62)] and the [Academy's] Charter.

44. From a review of 40 IEPs at [Academy] conducted during the renewal evaluation period in the 2016-2017 school year, the School District's Office of Auditing Services found a 15% error rate due to missing signatures or lapses in IEP dates.

45. [The Academy] does not have fully compliant and equitable student admission policies in accordance with the Charter School Law, the [] School Code, and its Charter in that:

a. [The Academy's] student enrollment materials for the 2016-2017 school year did not require parents or guardians to submit evidence of immunizations, parent/guardian registration statements and home language surveys prior to enrollment and attendance at the [Academy] as required by the Pennsylvania Department of Education ("PDE") Basic Education Circular on the Enrollment of Students.

16

b. The student enrollment files maintained by the [Academy] seen and reviewed by the CSO during the onsite visit to the school in November 2016 contained copies of social security cards, which cannot be requested, and required McKinney-Vento[2] affidavits, physical and dental records, and report cards/transcripts in order to enroll in violation of state regulations.

46. During the term of the Charter, the [Academy's] Code of Student Conduct was not in compliance with and the [Academy] did not comply with Chapter 12 of the Public School Code, [24 P.S. §§12-1201-1217]. In fall 2016, students pending expulsion were asked to remain home and were excluded from school for longer than 15 school days without a formal hearing.

47. The Board of Trustees of [Academy] failed to operate in accordance with applicable law and the [Academy] Bylaws and policies in that:

a. While the Bylaws state that Board of Trustees will annually elect officers, the minutes of the Board meetings do not provide evidence that the Board voted to elect officers during the 2013-2014 and 2015-2016 school years.

b. Minutes for the Board of Trustees from the 2014-2015 and 2015-2016 school years did not identify the date, time or location of all Board meetings as required by the Pennsylvania Sunshine Act.[3]

c. Thirty-nine of 40 Statements of Financial Interest were not submitted or completed timely throughout the charter term for all Board members and

---

[2] McKinney-Vento Homeless Assistance Act, 42 U.S.C. §§11301-11412.
[3] 65 Pa.C.S. §§701-716.

17

administrators for the years 2012, 2013, 2014 and 2015.

48. [The Academy] failed to meet the 100% highly qualified teacher ("HQT") requirement during every year of the Charter term, as required by the No Child Left Behind Act[4] as reported by PDE. In the 2012-2013 school year, only 79% of the PDE specified core academic classes taught at [the Academy] were taught by [HQTs]. In the 2013-2014 school year, only 80% of the PDE specified core academic classes taught at [the Academy] were taught by highly qualified teachers. In the 2014-2015 school year, only 74% of the core academic classes at [the Academy] were taught by [HQTs].

49. [The Academy] failed to meet the requirement that in each year of the Charter term at least 75% of professional staff members hold appropriate state certification. 70% of professional staff were appropriately certified in the 2012-2013 school year and 74% of professional staff were appropriately certified in the 2014-2015 school year.

50. During the CSO's onsite review of twenty of the [Academy's] personnel files during the fall 2016 renewal site visit, four of twenty employees were missing a current Pennsylvania Child Abuse Clearance; five of twenty employees were missing a current Pennsylvania Criminal Background Check; fifteen of twenty employees were missing a current FBI Background Check; and fourteen eligible employees, based on date of hire, were missing Act 168[5] training certifications. These omissions constitute violations of the Public School Code and the [Academy's] Charter.

---

[4] 20 U.S.C. §§ 6301-7941.

[5] Section 111.1 of the Public School Code, added by the Act of October 22, 2014, P.L. 2624, No. 168, *as amended*, 24 P.S. § 1-111.1 ("Act 168"), provides for an employment history review process.

18

51. [The Academy's] student health services policy as reviewed by the CSO during the 2016-2017 school year does not reference state mandated immunizations and examinations in accordance with Chapter 23 of the Pennsylvania School Health Code.[6]

52. The Pennsylvania Department of Health cited concerns over the lack of a school dentist at [the Academy] during the 2013-2014 school year, in violation of Article XIV of the Public School Code.

53. During the renewal site visit in November 2016, the CSO reviewed nine 8th grade student files. Of the nine 8th grade student files reviewed, two did not have proof of a dental exam in grade 7; three did not have proof of an annual vision screening in the 2015-2016 school year; three did not have proof of an annual hearing exam in the 2015-2016 school year; and two did not have proof of annual height and weight information for the 2015-2016 school year.

54. For the 2012-2013 school year, the 2013-2014 school year and the 2014-2015 school year, [the Academy] did not complete Form PDE-4101, which certifies the fulfillment of fire drill and school bus evacuation drill requirements.

55. [The Academy] failed to submit its 2014 and 2015 Annual Reports to PDE in a timely fashion in violation of the Public School Code and its Charter.

(R.R. at 2673a-79a.)

The SRC directed that a public hearing be conducted to address the CSO's recommendation not to renew the Academy's Charter. The School District appointed a Hearing Officer to conduct public hearings and issue a proposed report. Hearings

---

[6] 24 P.S. §14-401–14-1424, added by the Act of July 15, 1957, P.L. 937.

were held over the course of 14 days from October 9, 2017, through December 20, 2017.

Hearings

At the hearing, the School District presented evidence that the Academy is not the school described in its Original Application. (10/9/17 N.T. 107, R.R. at 1028a.) It presented evidence that the original charter applicant, Eastern University, is no longer involved with the Academy and has not been since the 2015-2016 school year. (10/9/17 N.T. 67-68, R.R. at 1018a.) It also presented evidence that Big Picture Schools, one of the Academy's original partners, is no longer affiliated with the Academy. The School District presented evidence that very few students meet the Commonwealth's college readiness benchmarks, and graduates of the Academy were not persisting at great numbers into college or graduating from college.

The School District presented undisputed evidence that the Academy did not meet the Commonwealth's graduation goals in 2013-2014 and 2014-2015. (Findings of Fact (F.F.) No. 155.) It also presented evidence that for every year of the 2012 Charter term, very few of the Academy's 12th graders achieved a score of at least 1550 on the SAT, which represents the college and career readiness benchmark. (F.F. Nos. 157-60.)

The School District also presented evidence that when compared to district averages and charter school sector averages, the Academy underperformed in virtually all years and in all subjects. Specifically, with respect to the PSSAs, the School District presented undisputed evidence that the Academy's PSSA Math proficiency decreased 51.99 percentage points from 2013 to 2017, and that the Academy's average was 14.92 percentage points lower than the charter schools and 13.18 percentage points lower than the School District Schools for those years. (F.F.

20

No. 130.)  The School District also presented undisputed evidence that the Academy's PSSA Reading proficiency declined 29.84 percentage points from 2013 to 2017, and that the Academy's average was 16.77 percentage points lower than the charter schools and 12.64 percentage points lower than the School District's schools.  (F.F. No. 132.) The School District also presented undisputed evidence that the Academy's PSSA Science proficiency declined 13.4 percentage points from 2013 to 2017, and that the Academy's average was 17.77 percentage points lower than the charter schools and 14.33 percentage points lower than the School District's schools.  (F.F. No. 134.)

With respect to the Keystone exams, the School District presented undisputed evidence that during the 2012 Charter term, the percentages of Academy students who scored proficient or advanced on the Algebra I exam were substantially below the overall percentages in the School District and charter schools, with the exception of 2012-2013.  (F.F. No. 138.)  The School District presented undisputed evidence that during the 2012 Charter term, the percentages of Academy students who scored proficient or advanced on the Literature exam were substantially below the overall percentages in School District and charter schools, with the exception for both sectors in 2015-2016 and School District schools in 2016-2017.  (F.F. No. 139.)  The School District presented undisputed evidence that during the 2012 Charter term, the percentages of Academy students who scored proficient or advanced on the Biology exam were consistently below the overall percentages in School District and charter schools, with the exception of the 2015-2016 school year.  (F.F. No. 140.)

The Academy did not dispute the accuracy of any of the data presented by the School District.  It argued instead that the School District's comparison of the Academy's performance on standardized tests to students from "special admission" or "magnet" schools was inherently unfair.  In support, the Academy presented an expert

in charter school policy, educational research, and Pennsylvania academic assessments, Alexander D. Schuh, Ph.D. (Dr. Schuh). Dr. Schuh opined that students who attend special admission schools have to meet certain stringent criteria related to attendance, punctuality, behavior, grade, and standardized test scores. He opined that these rigorous entrance criteria make special admission schools qualitatively different from neighborhood schools and charter schools and that a comparison of the Academy's standardized testing scores with special admissions schools was unfair. (R.R. at 2603a.)

The School District presented evidence relating to the results of CSO's site visit, including evidence of violations of Pennsylvania and Federal laws and regulations pertaining to student discipline, HQTs, annual reports, teacher certifications, student enrollment, special education files, special education screening, background checks and clearances, the Sunshine Act and Bylaws, statements of financial interest, and student health and safety. (F.F. Nos. 166-308.)

Hearing Officer's Report and Recommendation

The Hearing Officer issued his report on March 14, 2018, in which he recommended that the Academy's Charter not be renewed, upon concluding, in part, that the Academy "violated material standards and conditions contained in its written charter, has failed to meet applicable requirements for student performance, and has violated applicable laws from which it has not been exempted." (Hearing Officer's Report (Report) at 10.) Specifically, the Hearing Officer concluded that the Academy failed to meet the requirements set forth in its Charter regarding its affiliation with Eastern University and its stated mission as an early college high school and college-integrated learning community where all students will take and pass at least one college course as a condition of graduation. In this regard, the Hearing Officer found:

[The Academy's] stated mission in its Renewal Application to provide a college integrated learning community where graduates will have successfully mastered college level work is inconsistently reflected in school operations and programming during the charter term. During a three and a half[-]year founding partnership with Eastern University, the [Academy's] name sake, which ended in fall 2015, less than 100 students at the [Academy] participated in dual enrollment at Eastern University. In fall 2016, students were only enrolled in remedial, pre-college electives at the Community College of Philadelphia due to later registration by the [Academy]. The [Academy's] 2015-2016 graduating class had 0 students matriculate in the first fall after graduation at the founding partner post-secondary institution, Eastern University. Of the 52 students graduating from the [Academy] in 2015-2016 eligible to enroll in the first fall, only 28 students enrolled in a four-year public or private university although the [Academy's] mission is to provide a "college-integrated learning community."

(Report at 6, F.F No. 40.)

The Hearing Officer concluded that the Academy "no longer has the relationship with Eastern University that was fundamental to its [Original] Application. Eastern University was the founder and 'principal partner' of the proposed charter school, yet no student has taken a class at Eastern University since the fall of 2015." (Report at 16.) The Hearing Officer further found that the Academy "has attempted to replace Eastern University with Community College of Philadelphia, Manor College and Wilmington University, but none of those institutions provide the opportunities that were promised in the Application." *Id.* The Hearing Officer noted that "[n]o [Academy] student has ever taken and completed a course at Manor College or Wilmington University." *Id.* The Hearing Officer also found that the Academy "introduced no evidence that [Community College of Philadelphia] has stepped into Eastern University's previous role in the Early College high school design that the

23

Application[s] described, by providing professional development, dual enrollment at the [U]niversity's expense, graduate staffing resources, and the myriad of other opportunities and supports that Eastern University promised." *Id.*

The Hearing Officer also found relevant that the Academy and Big Picture Schools have decided to part ways during the term of the 2012 Charter due to a strained relationship. *Id.* The Hearing Officer determined that the "demise of [the Academy's] relationship[] with Eastern University and Big Picture Schools was a material detrimental change to the school that the SRC approved when it granted the 2012 [C]harter." *Id.* The Hearing Officer concluded:

> As set forth in the [Original] Application, all students at [the Academy] were to be provided with a college preparatory education and could begin taking college courses as early as the 9th grade. According to the 2012 Charter, [Academy] students would be able to earn as many as 62 college credits, and would be required to earn at least 3 college credits in order to graduate.[7] The [Original] Application promised that students would be offered the opportunity to take college courses in three different ways (i) taking accredited courses taught by [Academy] faculty at Eastern [University]; (ii) taking college courses at Eastern University; and (iii) taking college courses taught by Eastern University faculty and graduate students at [the Academy's] campus. Collaboration was to occur between university faculty and high school teachers around core competencies and student learning outcomes.
>
> [The Academy] has not kept these promises. [The Academy] never had the specified relationship with Eastern University during the 2012 Charter term. No Eastern University faculty or graduate students came to [the Academy's] campus to

---

[7] It is undisputed that the Academy unilaterally changed its graduation requirements during the 2012 Charter term to remove this requirement that students earn at least three college credits. (R.R. at 268a.)

teach course or to team-teach with [Academy] teachers. [The Academy's] own teachers and programs could not provide college credit. Only a small percentage of [Academy] students took a college course and an even smaller percentage actually passed the college courses they took.

(Report at 17.)

With respect to student performance requirements, the Hearing Officer found that: the Academy's [SPP] scores were in the lowest tier in every year of the 2012 Charter, lower than the School District's scores in all but one year, and lower than the charter sector scores in every year. (F.F. Nos. 127-28.) Nearly all of the Academy's proficiency rates were substantially below those of both the School District as a whole and the charter sector as a whole, and showed no clear pattern of significant improvement. (F.F. Nos. 130-144.) The Academy has not shown consistent or sustained success in closing the achievement gap for all of its students or for its historically underperforming students. (F.F. Nos. 145-47.) Nearly all of the Academy's [AGI] scores have not met the Pennsylvania growth standard. (F.F. Nos. 148-52.)

The Hearing Officer opined that the Academy's students will receive a better education if they transfer to other schools because in nearly all years, grades and subjects, the proficiency rates of students at School District schools and Philadelphia charter schools significantly exceeded the proficiency rates of Academy students. (F.F. Nos. 130-44.)

The Hearing Office also addressed dozens of legal violations, violations of Bylaws and violations of the Charter, which he concluded "reveal a pervasive lack of organizational competence," which further supported the SRC's decision not to renew the Academy's Charter. (Report at 100; F.F. Nos. 42-55.)

25

Based on the Hearing Officer's Report, SRC voted not to renew the Charter by Resolution dated April 26, 2018. The Academy timely appealed to the CAB. Before the CAB, the Academy argued that the School District failed to render its decision not to renew the Charter prior to the Charter's expiration date. The Academy also asserted that many of the grounds for the nonrenewal have no basis in the School Code, the Charter School Law, or regulations. It contended that the CSO imposed renewal standards which were not required by law. The Academy also asserted that the School District failed to meet its burden of proof on many of its claims, that its student performance standards were improperly compared to "special admission" schools, that several of its infractions do not warrant nonrenewal, and that the Hearing Officer was biased in his review.

The CAB adopted the Hearing Officer's findings of fact in their entirety. With respect to the Academy's argument that section 1729-A of the Charter School Law, 24 P.S. §17-1729-A, imposed a deadline by which a nonrenewal of a charter must be completed, the CAB rejected the argument, concluding that the plain statutory language of this section does not require nonrenewal proceedings to conclude before the end of a charter term. Following an independent review of the record, the CAB also found that the School District's decision not to renew the Academy's Charter was based upon substantial evidence which demonstrated that the Academy: (1) failed to meet student performance standards at section 1729-A(a) of the Charter School Law, and the regulations at 22 Pa. Code §4.12; (2) violated the terms of its Charter by failing to fulfill its mission of providing a college-integrated community and an early college program where students prepare for and earn college credit prior to graduation and losing its affiliation with Eastern University as a principal partner of the Academy; and

26

(3) violated numerous Pennsylvania and Federal laws and regulations. The CAB found the Academy's argument that the Hearing Officer was biased to be without merit.

Discussion

On appeal,[8] the Academy argues that the CAB erred by: (1) holding that School District's decision not to renew its Charter was timely; (2) determining that the Academy failed to meet the material standards and conditions of its Charter; (3) determining that the Academy failed to meet applicable requirements for student performance, as set forth in its Charter and in the regulations set forth at 22 Pa. Code §4.12; (4) holding that the Academy violated numerous provisions of the law from which it was not exempted; and (5) upholding the School District's use of the Renewal Rubric and its appointment of a biased Hearing Officer.

> 1. *Whether the CAB erred in finding that the School District's Decision not to renew Academy's Charter was Timely?*

In its first issue, the Academy argues that the School District was time-barred pursuant to section 1729-A(a) of the Charter School Law from not renewing the Academy's Charter due to the School District's failure to render its decision not to renew during, or at the end of, the Academy's 2012 Charter term, which was set to expire on June 30, 2017.

The CSO began its evaluation of the Academy's Renewal Application in the Fall of 2016, and approved Resolution SRC-8 on June 15, 2017. The Academy asserts that, based upon the plain language of section 1729-A(a) of the Charter School Law the School District was required to render its decision on whether to renew the

---

[8] This Court's review of the CAB's decision is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the decision is not supported by substantial evidence. *Ronald H. Brown Charter School v. Harrisburg City School District*, 928 A.2d 1145, 1147, n.6 (Pa. Cmwlth. 2007).

27

Academy's Charter prior to the June 30, 2017 expiration of the 2012 Charter term—for which renewal was sought. The Academy contends that the School District's failure to meet the timing deadline set forth under section 1729-A(a) of the Charter School Law, 24 P.S. §17-1729-A(a), consequently extinguishes the School District's right to seek termination or nonrenewal of the Academy's Charter for the term that has passed.

Section 1729-A(a) of the Charter School Law (Causes for nonrenewal or termination) states, in relevant part:

> ***During the term* of the charter or at *the end of the term* of the charter, the local board of school directors may choose to revoke or not to renew the charter** based on any of the following:
>
> (1) One or more material violations of any of the conditions, standards or procedures contained in the written charter signed pursuant to section 1720-A [of the Charter School Law, 24 P.S. §17-1720-A].
>
> (2) Failure to meet the requirements for student performance set forth in 22 Pa. Code Ch. 5 (relating to curriculum) or subsequent regulations promulgated to replace 22 Pa. Code Ch. 5 or failure to meet any performance standard set forth in the written charter signed pursuant to section 1716-A [of the Charter School Law, 24 P.S. §17-1716-A].
>
> (3) Failure to meet generally accepted standards of fiscal management or audit requirements.
>
> (4) Violation of provisions of this article.
>
> (5) Violation of any provision of law from which the charter school has not been exempted, including Federal laws and regulations governing children with disabilities.
>
> (6) The charter school has been convicted of fraud.

(Emphasis and italics added.) A school district may choose to revoke a charter or not to renew a charter on any of these listed grounds.

When examining the Charter School Law, we keep in mind the rules of statutory interpretation, including that a court's primary goal in interpreting a statute is to ascertain and effectuate the intention of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. §1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). Additionally, courts construe every statute, if possible, to give effect to all its provisions. 1 Pa.C.S. §1921(a); *Discovery Charter School v. School District of Philadelphia*, 166 A.3d 304, 316 (Pa. 2017).

We reject the Academy's assertion that section 1729-A of the Charter School Law contains a mandatory deadline by which a school district must decide whether to renew a charter which is expiring. Section 1729-A sets forth the specific grounds upon which a school district may revoke or not renew a school charter. The clear and unambiguous language in the Charter School Law reflects that the statute does not contain any definite or specific deadline by which the SRC had to issue its decision on the Academy's nonrenewal. The language is permissive, not mandatory, and provides simply that a school district may decide to revoke a charter during its term or to not renew a charter at the end of its term. It gives the school district two choices: (1) it may decide to "revoke" a charter during its term; or (2) to not "renew" a charter at the end of its term. Here, the Academy's Charter was expiring and the Academy submitted an application to renew. Pursuant to section 1729-A of the Charter School Law, the School Board was limited to the grounds enumerated in that section when

29

making that decision. Section 1729-A says absolutely nothing about any deadlines by which a school district must render its decision to revoke or not to renew.

The language "during the term of" is a reference to the school district's ability to "revoke" a charter during its term. The language "at the end of" simply relates back to the school district's ability to decide not to "renew" a charter at the end of its term. Taken to its logical conclusion, the Academy's argument is tantamount to asserting that a school district can never decide not to renew a charter under the Charter School Law unless the nonrenewal proceedings are completed "by" the end, or prior to or on the expiration date of the charter school's charter. If the Legislature intended to require a school district to issue its final decision not to renew a charter by a particular date or prior to the expiration of the charter term, it would have clearly indicated there was a deadline to do so in the Charter School Law. Such mandatory language does not appear in the Charter School Law, and we decline to expand the provisions by adding to it the requirement that a school district must issue its decision not to renew a charter on a date prior to the end of the charter term.

> 2. *Whether the CAB erred by determining that the Academy Failed to Meet the Material Requirements of its Charter?*

In its second issue, the Academy argues that the CAB erred in determining that the Academy failed to meet its stated mission to provide a "college-integrated learning experience" and an "Early College program where students prepare for and earn college credit prior to graduation." (R.R. at 2885a.)

When a charter is granted by a local board of school directors, the charter school is required to comply with the terms and conditions of the charter, as well as the information contained in the charter school application which are incorporated into the charter. *See* section 1720-A(a) of the Charter School Law. The Charter School Law

makes clear that a "written charter . . . shall act as legal authorization for the establishment of a charter school" and "shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees." Section 1720-A(a) of the Charter School Law. Accordingly, a charter school is required to comply with the terms and conditions of the charter, as well as the information contained in the charter school application which is incorporated into the charter. 24 P.S. §17-1720-A(a). Pursuant to section 1729-A of the Charter School Law, one or more material violations of any of the conditions, standards or procedures contained in the written charter is grounds to revoke or "not to renew" a charter. 24 P.S. §17-1729-A(a)(1).

Here, the mission statement set forth in the Academy's Original Charter Application included provisions for a "college-integrated learning community" and an "Early College program where students prepare for and earn college credit prior to graduation." (R.R. at 2885a.) The Academy's 2012 Renewal Application required that, in order to qualify for graduation from the Academy, students must successfully prepare for and take the SAT, complete a college portfolio, visit and interview with at least three colleges and obtain at least three college credits by taking accredited courses offered by its faculty at the Academy, taking college classes at Eastern University's campus, or taking college courses taught by Eastern University's faculty and graduate students at the Academy. (R.R. at 2776a.)

The CAB found that the Academy failed to meet these terms and conditions of its Charter Application and that this was grounds for not renewing the Academy's Charter. We discern no error.

The record shows that the Academy never had the specified relationship with Eastern University during the 2012 Charter year. No Eastern University faculty

31

or graduate students came to the Academy's campus to teach courses or to team-teach with Academy teachers. The record shows that during the term of its 2012 Charter, the Academy lost its affiliation with Eastern University as a principal partner. As part of a settlement agreement, the Academy agreed to change its name and remove any references to Eastern University from its public displays/advertisements. Furthermore, no Academy student has taken a class at Eastern University since the fall 2015. The record also shows that the Academy's attempts to affiliate itself with Community College of Philadelphia and Manor College, in a manner similar to its relationship with Eastern University, were unsuccessful. As noted above, there was no evidence credited by the CAB that any Academy student took or completed a course at either of these institutions, and the courses taken by Academy students beginning spring 2016 constituted college readiness and foundational courses for which no college credit was available. Only a small percentage of Academy students took a college course and an even smaller percentage actually passed the college courses they took. The record also established that out of 54 Academy graduates in 2013, only 9 satisfied the requirement of passing at least 1 college course. Of 48 graduates in 2014, only 10 satisfied the requirement. Of 47 graduates in 2015, only 6 met the requirement, and only 10 met the requirement out of the 52 graduates in 2016. The record further shows that only three Academy students graduated with at least three college credits in 2017, and that the Academy unilaterally eliminated that graduation requirement incorporated into its Charter without having sought a Charter amendment to do so.

In *Career Connections Charter High School v. School District of Pittsburgh*, 91 A.3d 736 (Pa. Cmwlth. 2014), this Court held that a charter school's failure to implement an integrated interdisciplinary curriculum or the applied learning approaches promised in its charter application was sufficient to support the CAB's

32

finding that school materially violated its charter, as ground supporting nonrenewal of school's charter under the Charter School Law. We explained:

> [T]he daily schedule and academic calendar proposed by Career Connections in its charter application were incorporated into the terms of the charter and, thus, legally binding when the District granted the initial charter. In order to change those terms, Career Connections was required to amend its charter. Because it changed the daily schedule and academic calendar without doing so, it is subject to closure under Section 1729-A(a)(1) of the [Charter School Law], regardless of whether the District knew of the changes. These changes to the daily schedule and academic calendar are clearly material, especially given that Career Connections touted its flexible daily schedule and 47-week school year as "innovations that . . . will enhance the educational program." . . . Accordingly, the CAB did not err in holding that those modifications by Career Connections constituted material violations of its charter.

*Id.* at 736.

Here, as in *Career Connections,* the facts support the CAB's conclusion that the Academy was not the charter school that its Charter and Applications promised in terms of the programming to be offered to students, the partnerships developed with Eastern University and Big Picture Schools for that programming and the outcomes that students were to achieve related to the Academy's mission as an early college high school with a college-integrated learning environment. The Academy freely admits that it unilaterally and without informing the School District disassociated itself with Eastern University during the term of its Charter. This was a critical and material change in the terms of the Charter. These factually supported grounds for nonrenewal support affirmance of the CAB's decision not to renew the Academy's Charter.

33

Accordingly, for this reason, we find that the CAB properly concluded that the Academy's material violations of the requirements of its Charter was sufficient ground for not renewing the Academy's Charter under section 1729-A(a)(1) of the Charter School Law.

### 3. Adequate Notice

The Academy argues that it was denied adequate notice of all of the bases for the School District's allegation that it failed to meet its stated mission to provide a college-integrated learning experience. The Academy contends that Paragraph No. 40 of the Nonrenewal Notice only mentioned the following three grounds in support of the mission-centered issue: (1) less than 100 students at the Academy participated in dual enrollment at Eastern University; (2) in 2016, students were only enrolled in remedial, pre-college electives at the Community College of Philadelphia due to late registration by the Academy; and (3) no students from the Academy's 2015-2016 graduating class matriculated at Eastern University. (Academy's Br. at 24.) The Academy further asserts that CAB "improperly expanded upon the underlying allegations set forth in the Nonrenewal Notice, in violation of 24 P.S. §17-1729-A(c)." (Academy's Br. at 9.) We find the Academy's argument is not factually or legally supportable.

The Academy has a protected property interest in its existing charter that implicates constitutional due process. *Northside Urban Pathways Charter School v. State Charter School Appeal Board, Pittsburgh Public School District*, 56 A.3d 80, 84 (Pa. Cmwlth. 2012). The Charter School Law requires that a charter school be apprised of the reasons for nonrenewal "with reasonable specificity." Section 1729-A(c) of the Charter School Law, 24 P.S. §17-1729-A(c). Section 553 of the Local Agency Law also requires the School District to provide the Academy with reasonable notice of a

34

hearing and an opportunity to be heard. *See* Section 553 of the Local Agency Law, 2 Pa.C.S. §553. Adequate notice for due process purposes "requires *at a minimum* that the notice contain a sufficient listing and *explanation of* the charges against an individual." *Pocono Mountain Charter School, Inc. v. Pocono Mountain School District*, 88 A.3d 275, 285 (Pa. Cmwlth. 2014) (emphasis in original) (citing *Caba v. Weaknecht*, 64 A.3d 39, 64 (Pa. Cmwlth. 2013)).

Here, the grounds stated in Paragraph No. 40 complied with the "reasonable specificity" requirements of section 1729-A(c) of the Charter School Law. Paragraph 40 of the SRC's Nonrenewal Notice provided, in part, that: "the [Academy's] stated mission in its Renewal Application to provide a **college integrated learning community where graduates will have successfully mastered college level work** is inconsistently reflected in school operations and programming during the Charter term." (R.R. at 2677a-78a) (emphasis added).

The Academy fully litigated the grounds for nonrenewal and had the opportunity to present witnesses, experts, and evidence on the failure to meet its mission issue. In an effort to demonstrate that the Academy complied with its mission, it presented the testimony of Fela Murray, the Academy's school counselor and early-college coordinator. On direct examination, Ms. Murray testified at the hearing that college-level coursework is part of the Academy's educational program, and during the Academy's charter, some Academy students took some college level courses at Eastern University and the Community College of Philadelphia. (11/6/17 N.T. 72-74; R.R. at 1616a.) However, on cross-examination, Ms. Murray admitted that the Academy does not currently have a requirement that students take college courses. (11/6/17 N.T. 187; R.R. at 1645a.)

35

The fact that Paragraph No. 40 gave examples of the conduct which supported the allegation in no way limited the School District from presenting evidence of other conduct which rebutted the Academy's evidence, and it did not prohibit CAB from considering the entire record. Further, the Academy fails to point to any harm caused by the alleged non-compliance. Specifically, the Academy does not explain what other information it was precluded from presenting due to the alleged lack of notice; therefore, it fails to demonstrate prejudice. "The mere demonstration of a potential procedural error, without also alleging a resulting harm, is not sufficient reason to disturb an agency adjudication." *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 719 (Pa. Cmwlth. 2010). Accordingly, this Court does not discern a due process violation in the alleged vagueness of the Nonrenewal Notice.

Conclusion

Under section 1729-A(a)(1) of the Charter School Law, a charter school's material violations of any of the conditions, standards or procedures contained in the written charter is justification for nonrenewal or revocation. Having reached the conclusion that the CAB properly concluded that the Academy's material violation of the requirements of its Charter was a sufficient ground for not renewing the Academy's Charter, it is unnecessary for us to address the Academy's remaining arguments.

Accordingly, CAB's order affirming SRC's decision not to renew the Academy's Charter is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Crompton did not participate in this decision.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eastern University Academy Charter
School,
      Petitioner

       v.

School District of Philadelphia,
      Respondent

:
:
:
:
:  No. 1167 C.D. 2019
:
:
:
:
:

## *ORDER*

AND NOW, this 10th day of July, 2020, the August 14, 2019 order of the Commonwealth of Pennsylvania, Department of Education, State Charter School Appeal Board is hereby affirmed.

           _____
           PATRICIA A. McCULLOUGH, Judge